**SCHROEDER et al. v. FREELAND et al.**

**Civ. A. No. 87–48.**

United States District Court
D. Nebraska, Omaha Division.

March 27, 1950.

Emmet L. Murphy and George Evens, Omaha, Neb., for plaintiffs.

G. M. Tunison, Omaha, Neb., and Richard C. Peck, Plattsmouth, Neb., for defendants Freeland and Olsen.

W. W. Wenstrand, of the firm of Fraser, Connolly, Crofoot & Wenstrand, Omaha, Neb., Reed O'Hanlon and Clark O'Hanlon, Blair, Neb., for defendants Williams and Chamberlain.

DONOHOE, Chief Judge.

It seems clear after a consideration of all the evidence introduced at the trial that the court has jurisdiction of the controversy now before it. The plaintiffs have brought this action to quiet title in themselves and to eject the defendants from certain real estate bordering on the Missouri River; basing their right to such relief on "tax deeds" which have been issued by the state of Iowa. The defendants, however, plead their own good title as a bar to the plaintiffs' petition. Such title arises out of the continuous enlarging of the original fee by the eastward movement of the Missouri River.

The rule of law which is here controlling was clearly stated by the Supreme Court in the case of State of Nebraska v. Iowa, 143 U.S. 359, 12 S.Ct. 396, 397, 36 L.Ed. 186:

" 'The question is well settled at common law, that the person whose land is bounded by a stream of water which changes its course gradually by alluvial formations shall still hold by the same boundary, including the accumulated soil. No other rule can be applied on just principles. Every proprietor whose land is thus bounded is subject to loss by the same means which may add to his territory; and, as he is without remedy for his loss in this way, he cannot be held accountable for his gain.' * *

"It is equally well settled that where a stream, which is a boundary, from any cause suddenly abandons its old and seeks a new bed, such change of channel works no change of boundary; and that the boundary remains as it was, in the center of the old channel, although no water may be flowing therein. * * * In Gould on Wa-

ters, § 159, it is said: 'But if the change is violent and visible, and arises from a known cause, such as a freshet, or a cut through which a new channel is formed, the original thread of the stream continues to mark the limits of the two estates.' "

The plaintiffs can not maintain this action unless the state of Iowa had authority to levy upon and sell the lands in question. It is true that in the year 1858, these lands were in the state of Iowa. At that time all of these lands were on the east side of the west bank of the river. But since then, the Missouri River has continually moved eastward so that now all the lands in question are on the west side of the east bank of the river. If the river changed its course by a sudden avulsion, then the state of Iowa did not lose jurisdiction of the lands in question and the tax deeds issued to the plaintiffs would be valid. On the other hand, if the river has changed its course by slow accretion, then the state of Iowa has lost jurisdiction of the lands as they have become a part of the state of Nebraska, and more specifically, a part of the estates of the defendants, who reside on the west bank of the river. See Lienemann v. Sarpy County, 145 Neb. 382, 16 N.W.2d 725, at page 729; Conkey v. Knudsen, 141 Neb. 517, 534, 4 N.W.2d 290, at page 300; First Nat. Bank of Missouri Valley, Iowa v. McFerrin, 142 Neb. 617, 643, 7 N.W.2d 173, 9 N.W.2d 166, at page 174; Conkey v. Knudsen, 143 Neb. 5, 10, 8 N.W.2d 538, at page 541; all following State of Nebraska v. Iowa, supra.

The uncontroverted testimony of several of the witnesses establishes the fact that the Missouri River has changed its course by a slow process of accretion. The expert testimony of the engineer, and the maps and charts which he clearly explained, illustrated the constant movement of the river to the east from 1856 to 1940. Each survey which was taken during that period of time showed that the river was continually changing its course; and the later the survey, the farther east the course. It is true that the change represented on the maps and charts could have been by an avulsion, but the uncontradicted testimony of those who had lived by the river for years, was that the change was slow; that the water washed away the land on the Iowa side and later deposited mud and sand on the Nebraska side, as is the case in the ordinary process of accretion. As the alluvial deposits were made, the defendants would evtend their boundaries to the edge of the river, thereby increasing their estates.

In the light of all the evidence, it seems clear that the tax deeds issued by the state of Iowa were of no force and effect because the land was in Nebraska and had, under the rule of State of Nebraska v. Iowa, supra, become part of the estate of the defendants.

Counsel for the defendants will prepare and submit for approval and adoption of the court detailed and specific findings of fact in relation to the real estate involved in this controversy in keeping with the above memorandum. Such findings shall be submitted to the plaintiffs for their approval. If such approval is not obtained, the court will settle any dispute promptly.

Judgment will be entered accordingly.