**SCHROEDER et al. v. FREELAND et al.**

No. 14237.

United States Court of Appeals
Eighth Circuit.

April 26, 1951.

George Evens and Roy M. Harrop, Omaha, Neb., for appellants.

Richard C. Peck, Plattsmouth, Neb. (George M. Tunison, Omaha, Neb., on brief), for appellees William W. Freeland and James Olsen, Jr.

W. W. Wenstrand, Omaha, Neb. (Reed O'Hanlon, Sr., Blair, Neb., W. C. Fraser and Thomas Marshall, Omaha, Neb., on brief), for appellees Margaret A. Williams and George Chamberlain.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This was an action in ejectment brought by appellants to eject appellees from certain

lands lying on the westerly side of the Missouri River, the westerly bank of that river being the easterly boundary of the lands in question. The lands are in the State of Nebraska as the boundary between Iowa and Nebraska is now established. All the parties are citizens of the State of Nebraska. The parties will be referred to as they were designated in the trial court.

Plaintiffs alleged that they had acquired title to the lands described in their complaint by reason of certain tax deeds issued to them by the County Treasurer of Harrison County, Iowa; that the title so acquired had been quieted and confirmed by a decree of the District Court in Harrison County, Iowa, in an action wherein the appellees William W. Freeland and Margaret A. Williams were parties defendant; that the lands were ceded to Nebraska under the Iowa-Nebraska Boundary Compact of 1943, Acts 50th Gen.Assem.Iowa, c. 306; Laws Neb. 1943, c. 130, and are now located in Washington County, Nebraska; that at the time of the proceedings culminating in the issuance of the tax deeds on which plaintiffs rely the land was all located in and was a part of Harrison County, Iowa.

The defendants in their separate answer challenged the jurisdiction of the court; alleged legal title in the defendants Freeland and Williams, the other defendants being in occupancy of the lands as tenants; alleged that the defendants Freeland and Williams and their grantors and predecessors in interest, had been in continuous possession and ownership of the lands in an unbroken chain of title since 1873; that the lands were neither ceded to Nebraska nor affected by the 1943 Acts referred to in plaintiffs' complaint because they had been a part of the State of Nebraska for many years prior thereto; that Harrison County, Iowa, was without jurisdiction of either the subject matter or the parties in the suit to quiet title to said lands; that the lands described as formerly being in Harrison County, Iowa, had gradually eroded and become non-existent and the lands claimed by the defendants were lands accreted to Nebraska and to the original patented lands of defendants' grantors by the gradual shifting of the Missouri River eastward, not by avulsion but gradually.

The case was tried to the court without a jury and resulted in judgment of dismissal based upon findings of fact and conclusions of law determining the issues on the merits in favor of the defendants. In a memorandum opinion, D.C., 89 F.Supp. 169, the court expressed the view that it had jurisdiction of the controversy. The court found that the lands were a part of the State of Iowa in the year 1858 and were then on the east side of the west bank of the Missouri River but that since that time the Missouri River had continually and gradually moved eastward so that all of the said real estate had been cut away by the river so as to destroy its identity and at and prior to the year 1934 the lands were not in existence as a part of the State of Iowa; that after the year 1858 the river moved gradually eastward and by a process of gradual attrition and erosion cut away all of said lands and at the same time gradually deposited the soil so eroded on the Nebraska or west bank of the river and by the process of accretion added the same to the lands situated in Washington County, Nebraska, and owned by the defendants Margaret A. Williams and William W. Freeland; that the eastern movement of the Missouri River and the process of erosion of the east bank and accretion to the west river bank continued until the year 1945, when the channel of the river and its course were stabilized and fixed at its present location by action and work of the Corps of Engineers of the United States; that all the lands claimed to be owned by plaintiffs had been eroded and cut away by gradual action of the Missouri River and had ceased to exist in the State of Iowa prior to 1934, and was in and a part of the State of Nebraska prior to said date; that the taxes purported to be assessed and levied thereon by the State of Iowa and its subdivision Harrison County, were void and of no effect and that tax deeds issued by said Harrison County in the State of Iowa, to the plaintiffs, and all acts and doings of the officials of Harrison County in the State of Iowa, pretending to foreclose said taxes and conveying the

lands, were and are ineffectual and void and said tax deeds conveyed no right or title.

The court then found that the defendant Freeland was the owner in fee simple of a part of the lands claimed by the plaintiffs and that he and his grantors had continuously owned and were in possession of them since the issuance of the described government patents dated respectively May 15, 1873 and May 15, 1875, and for more than ten years last past; that likewise the defendant Margaret A. Williams was the owner in fee simple of the balance of the lands claimed by plaintiffs and that she and her grantors had had continuous ownership and possession since May 15, 1873; that in the year 1943, when the settlement of the boundary dispute between the States of Nebraska and Iowa was determined, all of the lands in controversy were situated in and were a part of the State of Nebraska and were therefore not affected by the acts of the respective legislatures of Nebraska and Iowa, nor by the act of Congress approving such acts.

Based upon these and other findings the court concluded that plaintiffs were entitled to no relief and accordingly entered judgment adjudging that plaintiffs be perpetually enjoined from claiming title or other interest in the properties, and quieting title thereto in the defendants Freeland and Williams.

In seeking reversal plaintiffs contend that the findings of the court are not sustained by substantial evidence and that the court erred in various other particulars but in our view of the case it will not be necessary to consider these contentions separately. However, at the very threshold of this controversy we are met with a challenge to the court's jurisdiction. District Courts of the United States are not courts of general jurisdiction but of limited jurisdiction. This jurisdiction is to be exercised only within the limitations defined by the Constitution and Congress and the question of lack of federal jurisdiction may be raised at any time, either in the trial or appellate court. As an appellate court we must satisfy ourselves that the trial court had jurisdiction of the controversy under review. Minnesota v. Northern Securities Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338.

As has been observed the parties to this action were all citizens of the same state. It is claimed, however, that jurisdiction is vested in the federal courts by Section 2, Article III of the Constitution, which so far as here pertinent provides as follows: "The judicial Power shall extend to all Cases, in Law and Equity * * * between Citizens of the same State claiming Lands under Grants of different States * * *."

Appellants bottom their claim of jurisdiction on this provision of the Constitution and they cite in support of their contention the cases of Colson v. Lewis, 2 Wheat. 377, 4 L.Ed. 266, and Town of Pawlet v. Clark, 9 Cranch 292, 3 L.Ed. 735. Being a matter of history, we know that great areas of the public domain were acquired by the United States by discovery, conquest and cession from foreign powers. In certain of the areas so acquired many grants of land had been made by former sovereignty. Some of these were to private individuals and some grants covering large territories had been acquired by states. Thus, in Colson v. Lewis, supra, both plaintiff and defendant claimed land under different grants. One grant was issued by Kentucky, the other grant was issued by Virginia. So, too, in Town of Pawlet v. Clark, supra, the parties claimed lands by grants from the State of Vermont. The grantor in each of these cases was a state, which by reason of grants to it was the owner of the title and the right of possession. At the time of the adoption of the Constitution there were, as has been observed, many such grants and this constitutional provision vested power in the federal courts to determine all cases in law or equity arising between citizens of the same state claiming lands under grants from different states. Johnson and Graham's Lessee v. McIntosh, 8 Wheat. 543, 5 L.Ed. 681, and Martin v. Lessee of Waddell,

16 Pet. 367, 10 L.Ed. 997, were cases based upon such grants. In the first cited case, in which the opinion was written by Chief Justice Marshall, the controversy was between parties one of whom claimed under a grant from the State of Virginia and the other under a grant from a certain Indian tribe and this case discusses the status of the Indians' claim and the principle under which the Indians' right was extinguished. In Martin v. Lessee, supra, in which the opinion was written by Chief Justice Taney, plaintiffs claimed title under charters granted by Charles II. In the course of this opinion it is among other things said: "This opinion is confirmed by referring to similar grants for other tracts of country upon this continent, made about the same period of time. Various other charters for large territories on the Atlantic coast were granted by different monarchs of the Stuart dynasty to different persons, for the purposes of settlement and colonization, in which the powers of government were united with the grant of territory."

It was, we think, as to such grants that jurisdiction was conferred upon the federal courts.

■ In the instant case plaintiffs are relying upon certain tax deeds issued by a county treasurer of Harrison County, Iowa. The State of Iowa was not the owner of this land nor did it purport to grant title. The state did not own the land that was assessed and even the county did not purport to convey title except as a means of enforcing the sovereign right to collect the taxes levied on the land. It appears from recitals in these tax deeds that the county held certificates of tax sales and that it merely assigned these certificates to John Schroeder, one of the plaintiffs. These tax sales certificates were not grants to the county and their assignment by the county carried no grant of title. Ridgeway v. Reese, 100 Fla. 1304, 131 So. 136. The defendants· assert no claims based upon grants by either the State of Iowa or the State of Nebraska. Their claim of title is based upon deeds of ,conveyance from their predecessors and upon claim of accretion to the lands to which they hold record titles under these deeds of conveyance.

Referring to federal jurisdiction under this clause of the Constitution, the author of the article in Cy. Federal Procedure (2nd Ed.) Vol. 1, at page 337, says: "This class of cases, never relatively numerous, is now virtually extinct. * * * It applies to grants of legal title rather than to location of rights or equities on which they are based, and to a difference in states existing at the time of such grants, although one of the states originally included the other where the land lies."

In the article on Removal of Causes, 45 Am.Juris., Section 106, in referring to the statute providing for removal of cases of this sort, it is among other things said: "This statute has been invoked but seldom and it is obvious from the nature of the subject matter of the suits embraced within its terms that resort to it in the future will be so infrequent as to render it substantially obsolete. The federal court has jurisdiction on removal of a suit of this kind where the parties, both citizens of the same state, claim title under separate grants ,from different states, even though one of such states was originally a part of the other, from which it was separated and created as a separate and distinct sovereign state, prior to the making of the grants in suit."

■ We are clear that the claim of neither of the parties is based upon a grant from either the State ,of Iowa or the State of Nebraska within the meaning of this constitutional provision. It is, however, argued that the joint resolution of the legislatures of Nebraska ,and Iowa, concurred in by Congress, conferred rights upon the parties. But this legislation had no effect upon the title of the lands here involved. As said by the Supreme Court of Texas in Miller v. Letzerich, 121 Tex. 248, 49 S.W. 2d 404, 407, 85 A.L.R. 451, "It is elementary that a change of sovereignty does not affect the property rights of the inhabitants of the territory involved." See, also: United States v. Percheman, 7 Pet. 51, 8 L.Ed. 604; Airhart v. Massieu, 98 U.S. 491, 25 L.Ed. 213.

We repeat that neither the State of Iowa nor the State of Nebraska owned the lands in question and whatever relinquishments or cessions were made by them had reference only to the right of the sovereignty over the territory purported to be ceded. In United States v. Percheman, supra, the Supreme Court said: "A cession of territory is never understood to be a cession of the property belonging to its inhabitants. The king cedes that only which belonged to him. Lands he had previously granted were not his to cede."

In Airhart v. Massieu, supra, the Supreme Court, following Jones v. McMasters, 20 How. 8, 15 L.Ed. 805, said: " 'The general principle is undisputed, that the division of an Empire works no forfeiture of a right of property previously acquired.' "

The court also said: "We think, therefore, it may be regarded as settled that the severance of Texas from the Republic of Mexico, did not devest the title of Aguilera to the lands in dispute."

We conclude that the court was without jurisdiction over the subject matter of this controversy.

The judgment appealed from is therefore vacated and the cause remanded with directions to dismiss the cause for want of jurisdiction.