## LINSCOTT v. LINSCOTT.

Civ. No. 1–11.

United States District Court,
S. D. Iowa, S. D.

July 7, 1951.

Jens Grothe of Dickinson & Dickinson, Des Moines, Iowa, for plaintiff.

J. D. Reynolds, Creston, Iowa, for defendant.

RILEY, District Judge.

This matter came on to be heard at Des Moines, Iowa, upon the defendant's motion to dismiss the complaint. The defendant appeared by her attorney, J. D. Reynolds of Creston, Iowa, and the plaintiff appeared by his attorney, Jens Grothe of Des Moines, Iowa. The court having examined the files herein and having heard the arguments of counsel and studied the briefs submitted and being now fully advised finds that,—

Defendant's motion should be sustained.

The complaint as amended alleges that plaintiff is a citizen and resident of Wisconsin and the defendant to be a citizen and resident of Iowa, and the amount in controversy, exclusive of interest and costs, to exceed $3000. It also alleges plaintiff and defendant to be husband and wife, since their marriage in Lorimor, Iowa, in December 1950, where they resided along with plaintiff's daughter in the home of the defendant until their separation in December 1950, when plaintiff returned with his daughter to his former home in Wisconsin.

Each party had been married before, had raised their respective families to maturity and after their former spouses had died converted a friendship of 35 years into a marriage relationship. The friendship proved more enduring before wedlock than after because within less than three months they went their separate ways.

Before separating the parties made a written agreement on Dec. 11, 1950, in which they said:

"Contract

"Whereas, Frank Linscott and Bertha Lecocq entered into a marriage agreement on Sept. 15, 1950, and a marriage between said parties was performed, thereby changing the name of Bertha Lecocq to Bertha Linscott, and thereby giving to each party the usual rights and the usual liabilities and responsibilities that relate to a marriage; and

"Whereas, the said Frank Linscott and Bertha Linscott have agreed on a separation and a settlement of their property rights wherein neither party will have or claim any further rights or interests in the other party's property;

"Now Therefore, it is mutually agreed that Bertha Linscott shall have all of the property which she owned or was entitled to at the time of said marriage. It is further agreed that Frank Linscott has paid to Bertha Linscott the sum of $4350.22 for a settlement of the parties' property rights and interests, and, in consideration therefor, the said Bertha Linscott waives and surrenders any other rights and interests which she has or claims in the property of Frank Linscott.

"It is further agreed that said parties will separate and that Frank Linscott will obtain his personal belongings and remove his daughter and himself from the home and property of Bertha Linscott without any delay, but shall be granted a reasonable time within which to make his change to another place.

"This is not intended to be an agreement for a divorce, and the only thing that this instrument purports to do is to make a full and final settlement of the parties' property rights. Dated at Creston, Iowa, this 11th day of December, 1950.

"Frank Linscott
"Bertha Linscott."

Plaintiff now asks the court to decree the agreement to be wholly void and of no force and effect and asks for the repayment of the $4000, paid by the terms of the agreement, claiming undue influence, fraud, duress, coercion and that it is against public policy. He also asks for the payment of $4000 as exemplary damages.

Defendant has moved to dismiss because of this court's lack of jurisdiction. She asserts there is no diversity of citizenship because the parties are husband and wife, and since their domiciles must be the same in that relationship that the requisite diversity would be absent. It is urged as an added ground that since the relief claimed

affects the domestic relations of the parties, this court is without jurisdiction.

Plaintiff counters with the claim that the matter involved is an action by one spouse to recover money allegedly wrongfully obtained by the other to which the added relief of cancellation of the contract is but a necessary incident. He urges that this case does not "involve divorce, separate maintenance, alimony or adjudication of property rights."

The question of diversity of citizenship as between husband and wife has suffered the same pathetic transmutations as have so many questions affecting the sanctity of the marriage relationship and of the home. It is true that the United States Supreme Court once said: "And although the wife may be residing in another place, the domicile of the husband is her domicile." And also that: "Even where a wife is living apart from her husband, without sufficient cause, his domicile is in law her domicile." Anderson v. Watt, 1897, 138 U.S. 694, 706, 11 S.Ct. 449, 452, 34 L.Ed. 1078.

However, since then, the theoretical identity of person and interest and purpose and the "oneness" of the marriage state, have become transplanted almost at the church door by the new rule which provides for them as a practical matter almost no unity of person. "By adjudication and legislation the 'disabilities' of married women have been almost universally removed so that in all practical respects the husband and wife stand on equal footing as regards control over the other." Taylor v. Milam, D.C.W.D.Ark. 1950, 89 F.Supp. 880, 882; and see also Garberson v. Garberson, D.C.N.D.Iowa, 1949, 82 F.Supp. 706, where the matter is fully discussed. We adopt its conclusions.

We hold the jurisdictional requirement as to diversity of citizenship and amount to be fully met.

Nevertheless, the court lacks jurisdiction of this controversy because in our opinion it involves the domestic relations of the parties. The rule is tersely stated in State of Ohio ex rel. Popovici v. Agler, 280 U. S. 379, 383, 50 S.Ct. 154, 155, 74 L.Ed. 489: "It has been understood that, 'the whole subject of the domestic relations of hus-

band and wife, parent and child, belongs to the laws of the states and not to the laws of the United States,' Ex parte Burrus, 136 U.S. 586, 593, 594, 10 S.Ct. 850, 853, 34 L. Ed. 500, and the jurisdiction of the Courts of the United States over divorces and alimony always has been denied. Barber v. Barber, 21 How. 582, 16 L.Ed. 226, Simms v. Simms, 175 U.S. 162, 167, 20 S.Ct. 58, 44 L.Ed. 115; De La Rama v. De La Rama, 201 U.S. 303, 307, 26 S.Ct. 485, 50 L.Ed. 765. A suit for divorce between the present parties brought in the District Court of the United States was dismissed. Popovici v. Popovici, D.C., 30 F.2d 185."

Were there involved here an attempt to enforce that part of a valid decree of divorce granted in a state court which included a judgment of alimony, we would have a wholly different matter, involving questions which are not now before the court.

The parties have said in their contract that the agreement is not one "for divorce" but is "to make a full and final settlement of the parties property rights."

The statute of Iowa relating to divorce and the settlement of property rights is contained in Chapter 598, Code of Iowa 1950. Section 598.14 thereof is as follows:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right.

"Subsequent changes may be made by it in these respects when circumstances render them expedient."

Title XXVIII of the Code of Iowa, 1950, is entitled "Domestic Relations" and in six successive chapters deals separately with Marriage; Physical Requirements of Marriage License; Husband and Wife; Divorce and Annulment of Marriages; Minors; and Adoption.

That some significance may be attached to the fact that these subjects all appear in this same chapter, see Albanese v. Richter, 3 Cir., 1947, 161 F.2d 688, 689. Also the opinion in the Albanese case says: "Mere diversity of citizenship and jurisdictional amount, in and of themselves, are not sufficient to give jurisdiction to federal courts.

805

28 U.S.C.A. § 41(1) (now Sec. 1332(a)(1), as interpreted by the courts, has been held consistently not to include suits primarily involving domestic relations. · Fontain v. Ravenel, 1854, 17 How. 369, 58 U.S. 369, 15 L.Ed. 80; and see In re Burrus, 1890, 136 U.S. 586, 593, 10 S.Ct. 850, 34 L.Ed. 500, and Williams v. North Carolina, 1945, 325 U.S. 226, 233, 237, 65 S.Ct. 1092, 89 L. Ed. 1577, 157 A.L.R. 1366."

Plaintiff flatly argues that this case does not involve domestic relations. However, so to agree would be to ignore the very source of the word. The word "domestic" is a derivative one. The relation it implies suggests some relationship to house or home and extends to things outside of as well as within it. A home has an exterior as well as an interior and things connected with it on the outside clearly may be things of or pertaining to it and the family. See Hall v. Philadelphia Co., 1913, 72 W.Va. 573, 78 S.E. 755. The term "domestic relation" is to be given a broad liberal construction and its meaning depends much upon the connection with which it is used. Its significance must always be determined with reference to its subject matter and the relation in which it appears.

We consider the question here definitely one affecting the domestic relations of these parties and what may have once been their family. We can conceive a situation between these parties, should divorce follow, where the State court hearing the divorce action would be met with a plea of res adjudicata as to their property rights based upon our action here. This could create a situation where as between these parties the court hearing the divorce action might find itself powerless to make equitable provisions between them as to property rights—a determination which could be an essential part of the relief necessary to accomplish complete justice. We could do an ill service by here attempting to accept jurisdiction, in a matter in which our ultimate determination could prove an obstacle to the granting of appropriate relief by the State court. Certainly this court will not attempt by construction to enlarge its jurisdiction. It is a court of limited jurisdiction exercising only the

powers which Congress has conferred. "District Courts of the United States are not courts of general jurisdiction but of limited jurisdiction. This jurisdiction is to be exercised only within the limitations defined by the Constitution and Congress * * *." Schroeder v. Freeland, 8 Cir., 1951, 188 F.2d 517, 519.

The motion to dismiss should be sustained.