**Leroy ARMSTRONG, Plaintiff-Appellee,**

v.

**Virginia D. ARMSTRONG, Defendant-Appellant.**

**Leroy ARMSTRONG, Plaintiff-Appellant,**

v.

**Virginia D. ARMSTRONG, Defendant-Appellee.**

**Nos. 74–1259 and 74–1282.**

United States Court of Appeals, First Circuit.

Argued Nov. 6, 1974.

Decided Dec. 27, 1974.

Milton Stanzler, Providence, R. I., with whom Abedon, Michaelson, Stanzler & Biener, Providence, R. I., was on brief, for Virginia D. Armstrong.

James P. Flynn, North Kingstown, R. I., for Leroy Armstrong.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

CAMPBELL, Circuit Judge.

On October 13, 1971, and May 9, 1972, the Rhode Island Family Court awarded to Virginia and Leroy Armstrong interlocutory and final divorce decrees. Both decrees awarded custody of their minor children to Virginia, and provided that Leroy had a duty to support Virginia

and the minor children. No alimony was provided; rather the decrees recited that

> "the aforesaid duty to support is governed by a Memorandum of Understanding between the parties, dated October 12, 1971, which is incorporated by reference, and made a part hereof, and therefore, there will be no express order."

The Memorandum of Understanding revealed that Leroy had given Virginia a non-negotiable note for $288,000, payable in sixteen annual installments of $18,000, and secured by a mortgage on several nursing home properties formerly owned by the couple jointly and now owned by Leroy. Virginia and Leroy, as signers of the Memorandum, "acknowledged and understood that in addition to the sum being part payment for [the two nursing home parcels] these payments are substantially for alimony and support of the minor children."

The federal litigation from which this appeal is taken was an outgrowth of Leroy's failure to maintain payments under the note. Virginia initiated foreclosure proceedings, and Leroy responded by suit in the Rhode Island Superior Court for Washington County requesting an injunction against the proposed foreclosure sale and equitable cancellation or reformation of the Memorandum of Understanding, the mortgage and the note. As grounds for equitable relief, Leroy asserted that both parties had erroneously understood that the $18,000 annual payments would be reimbursed, at least partially, by certain state receipts relative to the nursing home formerly owned by the couple and now operated by Leroy. The alleged misunderstanding was said to be a "mutual mistake."

Virginia, a Florida resident, undertook to remove her former husband's equitable suit to the federal district court under 28 U.S.C. § 1441(a). She also filed a

counterclaim in that court for the full amount of the note. The district court, after first granting Leroy a temporary restraining order against foreclosure of the mortgage, said it would hear the case, but expressed concern as to whether it could be entertained in a federal court. After Leroy had rested, the court dismissed both the complaint and counterclaim "for lack of jurisdiction," asserting that a "federal court . . . has no jurisdiction whatever to modify state court decrees in domestic relations matters." Both parties appealed. Leroy takes the position that in dismissing the district court acted correctly, but he contends that the case should have been remanded to the Superior Court, or at least dismissed without prejudice.

It has often been said that federal courts are without jurisdiction to decide domestic relations cases. Cf. C. Wright, Federal Courts 84 (2d ed. 1970); H. Hart & H. Wechsler, The Federal Courts and the Federal System 1189–92 (2d ed. 1973). The limitation goes back to a dictum in Barber v. Barber, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859),

> "We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce a vinculo, or to one from bed and board."

Quite likely, as Judge Weinstein shows in Spindel v. Spindel, 283 F.Supp. 797, 800–801 (E.D.N.Y.1968), the Article III judicial power is broad enough to cover even such matrimonial matters if Congress were to provide, but the force of Barber was that divorce and alimony actions were not "suits of a civil nature at common law or in equity" within Congress' original grant of diversity jurisdiction, Act of Sept. 24, 1789, § 11, 1 Stat. 72, 78, Id. at 804.[1] The current wording of 28 U.S.C. § 1332, "civil actions," is not

---

1. In support of this assumption, it was maintained that English chancery jurisdiction did not embrace the subjects of divorce and alimony, these being left variously to the ecclesiastical courts and Parliament. See Spindel

v. Spindel, 283 F.Supp. 797, 802 (E.D.N.Y. 1966); Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 512–514 (2d Cir. 1973).

deemed to have altered this rule, and we agree with Judge Friendly that "it is beyond the realm of reasonable belief that, in these days of congested dockets, Congress would wish the federal courts to seek to regain territory, even if the cession of 1859 was unjustified." Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 514 (2d Cir. 1973).

Lower federal courts have had difficulty determining when to decline cases which, though not strictly speaking actions for divorce or for alimony, are related to those subjects. The purely jurisdictional exception has been narrowly confined. But it has been held that a federal court—even when it has jurisdiction—may abstain for reasons of comity and common sense from cases better handled by the state courts having authority over matrimonial and family matters. *Phillips, supra* at 515–516; Magaziner v. Montemuro, 468 F.2d 782, 787 (3d Cir. 1972); Buechold v. Ortiz, 401 F.2d 371, 373 (9th Cir. 1968).

■ We do not struggle to decide whether the present case falls technically within or without federal "jurisdiction." We are satisfied that in any event it is a case as to which sound federal policy as well as comity dictates abstention. Before the divorce, the Armstrongs had run a successful nursing home; the end of their business partnership as well as their marriage was signalled by a spate of law suits including one for alienation of affection. In settlement of these and in anticipation of a divorce, various agreements—including the Memorandum of Understanding, the note and the mortgage—were negotiated immediately preceding entry of the divorce decrees. From the face of the divorce decrees, it would appear that the note and mortgage to which the Memorandum refers were in lieu of support and alimony. It will thus be difficult if not impossible to separate the equities Leroy now asserts

in support of a right to modify or cancel the agreement from the question of Leroy's continuing support obligations—and these, in turn, may require a court to investigate the needs of his family and Leroy's current capabilities as a family provider. While a federal court might, in a narrow sense, adjudicate the obligations vested under the note and mortgage, it could not determine Leroy's continuing family support obligations, and would lack both the power and the resources of the Rhode Island Family Court to consider what might best serve the current interests of the family. In such circumstances, we think a federal court should decline jurisdiction. There is no reason to proliferate the number of available forums for litigation rooted in the duties of former spouses to one another and to their family. To handle matrimonial and family matters states like Rhode Island have created specialized courts with social work functions and facilities. *See, e. g.,* R.I. Family Court Act, G.L. § 8–10–1 et seq. While the present litigation was in the Superior Court, the record indicates that related proceedings were commenced in the Rhode Island Family Court,[2] and it would seem unwise for a federal court to issue orders which, because of *res judicata* or estoppel, might severely restrict the ability of the appropriate state court to reach an equitable result. *See* Linscott v. Linscott, 98 F.Supp. 802, 805 (S.D.Ia. 1951).

■ While we agree with the district court's conclusion that the action may not be entertained in a federal forum, this should have dictated a remand to the state court rather than a dismissal. *See* 28 U.S.C. § 1447(c); 1A Moore's Federal Practice ¶ 0.169 [1]. The order of dismissal is vacated and the district court is instructed to enter an order remanding the action to the state court from which it was removed.

So ordered.

---

2. Soon after this case was removed to the federal court, Leroy apparently obtained from the Rhode Island Family Court a temporary restraining order against his former wife's foreclosure sale. Her subsequent attempt to remove that proceeding was refused by the district court.