Bernard KAMHI, Appellant,

v.

Mannie COHEN, Appellee.

No. 546, Docket 74–2410.

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1975.

Decided March 4, 1975.

Frank Delaney, New York City, for appellant.

Arthur J. Haussman, Brooklyn, N. Y. (Kadanoff & Haussman, P. C., Brooklyn, N. Y., of counsel) for appellee.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This appeal raises a question of interpretation of Fed.R.Civ.P. 19[1] which was formerly entitled "Necessary Joinder of Parties" and is now entitled "Joinder of Persons Needed for Just Adjudication." The appellant, Bernard Kamhi, M.D., presently residing in Nevada, is the former husband of Shirley Kamhi. The appellee, Cohen, is the receiver and sequester appointed in the former Mrs. Kamhi's New York divorce action against the appellant. Cohen's function is to bring before the court any property belonging to Dr. Kamhi which might be used to pay alimony and child support awarded in connection with the granting of the New York divorce.

The suit from which this appeal is brought was one commenced by Dr. Kamhi in an attempt to set aside the seizure, by Cohen, of appellant's so-called Keogh Plan Retirement fund, to which

1. Rule 19. Joinder of Persons Needed for Just Adjudication.

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

.     .     .     .     .

Dr. Kamhi contributed while he was practicing medicine in New York.[2] The trustee for the fund is a bank in Staten Island, New York.

The ground upon which appellant bases his claim for relief focuses upon the dual aspects of matrimonial actions. On the one hand, the action is a proceeding in rem the purpose of which is to alter the matrimonial status of the parties before the court; the proceeding, however, can also have a substantial in personam aspect, fixing the rights and duties of the parties involved with respect to alimony and child support.[3] Appellant maintains that the New York divorce which his former wife obtained on April 25, 1974, was only an in rem judgment, since it was made at a time when he contends he was a bona fide resident of Nevada.[4] Accordingly, he takes the position that the sequester, appointed in the New York divorce action, was without authority to seize any of his property since a seizure subsequent to judgment would require that the court have had in personam jurisdiction over the appellant.[5] Caplan v. Caplan, 30 N.Y.2d 941, 335 N.Y.S.2d 693, 287 N.E.2d 385 (1972); Geary v. Geary, 272 N.Y. 390, 6 N.E.2d 67 (1936). *But see* Tarshish v. Tarshish, 27 A.D.2d 909, 278 N.Y.S.2d 718 (1st Dep't 1967).

Without reaching the merits of appellant's claims, the court below dismissed the action on the ground that appellant had failed to include his ex-wife "as an indispensable party," giving one month's leave to appellant to serve an amended complaint. Appellant did not avail himself of this opportunity.

■ While the label "indispensable party" is misleading, we believe that Dr. Kamhi's former wife should have been joined under Rule 19(a) and that the court below quite properly considered that in "equity and good conscience" as required by Rule 19(b) the action should be dismissed. We accordingly affirm although we invite the district court on remand to give appellant one further opportunity to amend.

We say that the term "indispensable party" is misleading because the very essence of the amendments to Rule 19 in 1966 was to abandon the rigid thinking brought about by the use of this and other labels in the old Rule 19. *See* Advisory Committee Note to the 1966

**2.** Jurisdiction is based upon both diversity, 28 U.S.C. § 1332, and a claimed federal question, that is, the limits of a state's jurisdictional power over one claiming to be a nonresident, 28 U.S.C. § 1331. The matter in controversy, exclusive of interest and costs, exceeds $10,-000.

**3.** Whether this distinction between in rem and in personam jurisdiction precludes the seizure of in-state property is a question presently being raised in New York. Renaudin v. Renaudin, 37 A.D.2d 183, 186, 323 N.Y.S.2d 145, 148 (1st Dep't 1971) (Eager, J., dissenting), appeal withdrawn, 29 N.Y.2d 725, 326 N.Y.S.2d 386, 276 N.E.2d 224 (1971). McLaughlin, Supplementary Practice Commentary, N.Y.C.P.L.R. § 314 (McKinney 1972). The trend toward extending in personam jurisdiction through the use of "long-arm" statutes wherever there are sufficient contacts linking a nonresident to a forum state suggests that courts may scrutinize the distinctions between in rem and in personam jurisdiction more closely. Here, the Kamhis were married in New York and resided in New York for many years; one might well question whether a divorce action such as the present

one which included incidental in personam relief affecting only New York property would "offend 'traditional notions of fair play and substantial justice'." International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *But see* N.Y.C.P.L.R. § 302(b) (McKinney Supp.1974), which might well strain the constitutional limits that a state may assert over a nonresident in connection with a matrimonial action.

**4.** Dr. Kamhi had apparently obtained his own divorce in Nevada on December 21, 1973, having been domiciled there since October 13, 1973. Appellant maintains that his continued presence in that state, together with an expressed intention to remain there, makes him a bona fide Nevada resident. However, in the New York divorce decree, it appears that the court made a finding that Dr. Kamhi was still a resident of New York as of April 24, 1974.

**5.** Dr. Kamhi takes the position that seizure of his New York assets in connection with an in rem divorce action would have been proper only if the seizure were made prior to the final divorce decree.

Amendment of Rule 19(a), 39 F.R.D. 89, 91–92; Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 364–66 (1967). That rigid thinking had utilized the rather flexible categorizing of Shields v. Barrow, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1855),[6] to turn, old Rule 19 into a rather inflexible rule even going so far as to equate "indispensable" with "having a joint interest" under subdivision (a). *See* United States v. Washington Institute of Technology, Inc., 138 F.2d 25, 26 (3d Cir. 1943); *Cf.* Chidester v. City of Newark, 162 F.2d 598 (3d Cir. 1947). The courts, in short, had forgotten the admonition of Judge Learned Hand, speaking in Roos v. Texas Co., 23 F.2d 171, 172 (2d Cir. 1927), cert. denied, 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001 (1928), of Rule 39 of the Equity Rules (predecessor to Rule 19) and its provision that gave discretion to the court to proceed without parties ordinarily necessary but prescribed that the decree must be without prejudice to those who are absent: "The general statement does little to advance matters, until one knows what is the test by which to ascertain when such rights can be protected and when not, and this we understand to be *an entirely practical question, dependent in each case upon the facts.*" (Emphasis added.)

■ In any event, Professor John W. Reed's seminal article, Compulsory Joinder of Parties in Civil Actions, 55 Mich. L.Rev. 327 (1957), which was a keystone of the 1966 changes in Rule 19, pointed out the various interests that should be involved in a Rule 19 decision, not the least of which was "the social interest in the orderly, expeditious administration of justice." *Id.* at 330. He called for abandonment of the labels "necessary" and "indispensable." *Id.* at 328–29. In the change of the rule's name to which we first alluded, as well as in its revised body, Professor Reed's thinking has largely been followed. Thus Rule 19 today involves a balancing of interests— those of the parties and of the outsider, those of the public and of the court in seeing that the litigation is both effective and expeditious, Schutten v. Shell Oil Co., 421 F.2d 869 (5th Cir. 1970), while taking into account "equity and good conscience."[7] Relying on the phi-

6. In Shields v. Barrow, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1855), the Supreme Court stated that there were, in addition to formal parties, two other classes of parties.

2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.

While this language may be faulted for its vagueness, it should be clear that the court was suggesting by its "equity and good conscience" language, a flexible approach to deciding if a particular person was "indispensable." That language has of course been inserted in new Rule 19(b).

7. In Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109–11, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968), the Court suggested four interests to be considered in deciding whether a court should proceed without a party having an interest in the litigation.

First, the plaintiff has an interest in having a forum. Before the trial, the strength of this interest obviously depends upon whether a satisfactory alternative forum exists. On appeal, if the plaintiff has won, he has a strong additional interest in preserving his judgment. Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. . .

Third, there is the interest of the outsider whom it would have been desirable to join. . . . [T]he court must consider the extent to which the judgment may "as a prac-

losophy of United Mine Workers v. Gibbs, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), that "joinder of claims, parties and remedies is strongly encouraged," Professor Wright has stated that "the rule should be employed to promote the full adjudication of disputes with a minimum of litigation effort." 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1602 at 18 (1972).

With these considerations in mind, we will try to employ Judge Hand's pragmatic approach to determine whether Judge Neaher's discretion was properly exercised. From the standpoint of the appellant as plaintiff below, he has, of course, the right to choose his forum, although we have only recently said that "there is particularly strong reason for abstention in cases which, though not within the exceptions for matters of probate and administration or matrimony and custody actions, are on the verge, since . . . they raise issues 'in which the states have an especially strong interest and a well-developed competence for dealing with them.' " Phillips, Nizer, Benjamin, Krim and Ballon v. Rosenstiel, 490 F.2d 509, 516 (2d

Cir. 1973). Dr. Kamhi's reluctance to go into state court is understandable in view of N.Y.C.P.L.R. § 303 (McKinney 1972)[8] which might be construed to give Dr. Kamhi's former wife an opportunity to obtain personal jurisdiction over appellant in a counterclaim for alimony or support. This is a matter which we are little competent to, and do not, decide, particularly in the light of N.Y.C.P.L.R. § 302(b) (McKinney Supp.1974)[9] which, even though enacted after the judgment of divorce in this case, might conceivably be construed to give some sort of continuing jurisdiction over the doctor despite his residence elsewhere. At the same time, one may question why the commencement of this action is not in and of itself a vehicle for service by the ex-wife of the husband's attorney under § 303; in other words, we wonder what he stands to gain by proceeding here, as opposed to proceeding against the sequester in state court, although we understand his contention that § 303 does not apply to federal court actions. To be sure, he speaks somewhat reproachfully of the constitutional implications of New York's asserting in personam jurisdiction in what he says is an in rem action, but there is nothing to indicate to us that

tical matter impair or impede his ability to protect" his interest in the subject matter. . . .

Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. We read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be "adequate," to refer to this public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them. After trial, considerations of efficiency of course include the fact that the time and expense of a trial have already been spent. (Footnotes omitted.)

8. N.Y.C.P.L.R. § 303 (McKinney 1972) provides as follows:

The commencement of an action in the state by a person not subject to personal jurisdiction is a designation by him of his attorney appearing in the action or of the clerk of the court if no attorney appears, as agent, during the pendency of the action,

for service of a summons in any separate action in which such a person is a defendant and another party to the action is a plaintiff if such separate action would have been permitted as a counterclaim had the action been brought in the supreme court.

9. N.Y.C.P.L.R. § 302(b) (McKinney Supp. 1974) provides as follows:

Personal jurisdiction over non-resident defendant. A court in any matrimonial action or family court proceeding involving a demand for support or alimony may exercise personal jurisdiction over the respondent or defendant notwithstanding the fact that he or she no longer is a resident or domiciliary of this state, or over his or her executor or administrator, if the party seeking support is a resident of or domiciled in this state at the time such demand is made, provided that this state was the matrimonial domicile of the parties before their separation, or the defendant abandoned the plaintiff in this state, or the obligation to pay support or alimony or alimony accrued under the laws of this state or under an agreement executed in this state.

the New York courts cannot, as they have been able to do in the past, adequately deal with the constitutional dictates of William v. North Carolina II, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945).

As for the appellee here, the sequester, he was appointed in the divorce proceeding by the Supreme Court, Kings County. He is an officer of and responsible to that court, acting as he does under N.Y.Dom.Rel.Law § 233 (McKinney's Consol.Laws, c. 14, 1964). Interestingly, it is possible that under N.Y.Dom. Rel.Law § 235 (McKinney 1964), the appellee does not even have the power to examine and review the matrimonial file in the Supreme Court, which might well be necessary to the proper assertion of a defense made below, that there was in fact in personam jurisdiction over the appellant in the divorce action. Beyond this he has a proper right to wish to avoid multiple litigation and the possibility of inconsistent decrees in reference to his conduct. *See* Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Mrs. Kamhi doubtless has an interest in this litigation, such that we may wonder why she has not sought leave to intervene, since it is her judgment which the sequestration seeks to protect. Surely under the more flexible approach to Rule 19 decision-making now required, it is feasible to join her; while it may be that in her absence complete relief could be accorded among the parties, she does have an interest relating to the subject of the action and is so situated that disposition of the action in her absence may as a practical matter impair or impede her ability to protect that interest. Joining her would not defeat diversity, nor would it be impracticable to serve her. Under these circumstances we think that by the terms of Rule 19(a) the court was required to join her—the rule says, "the court shall order that he be made a party."

█ This being so the court is required under Rule 19(b) "in equity and good conscience" to determine whether to proceed or to dismiss, since appellant has not seen fit, for what may be good reasons of his own, not to serve her, now that she has been "regarded as indispensable." In making this judgment, while the court below did not articulate the public interest factors, it seems to us they must be taken into account. Whether one calls it comity or something else, it would seem inappropriate for the federal court, absent jurisdiction over Mrs. Kamhi, to subject the sequester to inconsistent decrees. For a federal court to accept jurisdiction in a matter which in the words of *Phillips, Nizer, supra,* at least "verges" on the matrimonial, or where as here the receiver is a state court appointee and hence an arm of the state court, would require proof of substantial countervailing factors not shown to be present in this suit. The multiplicity of litigation here involved has evidently been caused by the husband's unwillingness to subject himself to the possible operation of New York State domestic relations laws in what he refers to as "the legal atmosphere" of New York State, an atmosphere we take it not altogether amicable toward husbands who leave New York wives for the more favorable climes of Nevada. But this is hardly grounds for the federal court to go out of its way to exercise its conceded jurisdiction, as a matter of policy—what was referred to in Elmendorf v. Taylor, 23 U.S. (10 Wheat.) 152, 165, 6 L.Ed. 289 (1825), as "the policy of the court." The policy of our court will remain, the case being otherwise equal in equity, to keep our federal hands off actions which verge on the matrimonial, or impinge upon the matrimonial jurisdiction of the state courts. We believe, however, that appellant should be given an additional 30 days' leave to serve and file an amended complaint, naming Mrs. Kamhi as a party, after remand to the district court. We request the court below to grant such leave.

Judgment affirmed in accordance with opinion, costs to appellee.