Russell A. FIRESTONE, III and Myrna Odell Firestone, Plaintiffs-Appellants,

v.

The CLEVELAND TRUST COMPANY and Russell A. Firestone, Jr., Defendants-Appellees.

No. 79–3684.

United States Court of Appeals, Sixth Circuit.

Argued April 7, 1981.

Decided July 30, 1981.

Joan Odell, Miami, Fla., for plaintiffs-appellants.

Timothy F. Bannon, Baker, Hostetler & Patterson, Richard F. Stevens, Jonathan E. Thackeray, Baker & Hostetler, Mark O'Leary, Cleveland, Ohio, for defendants-appellees.

James R. Bright, Spieth, Bell, McCurdy & Newell, Cleveland, Ohio, for Firestone, Jr..

Before BAILEY BROWN and BOYCE F. MARTIN, Jr., Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This appeal involves yet another effort to confer domestic relations jurisdiction upon

the federal courts. The district court dismissed[1] on the ground that as a general rule federal courts will not entertain matters involving domestic relations even though diversity of citizenship exists. We affirm.

### I

This ongoing domestic relations dispute began when Myrna Odell Firestone obtained a divorce from Russell A. Firestone, Jr., in a Florida state court in 1974. The 1974 divorce decree spawned further litigation between Myrna and Russell Firestone, Jr., in the Florida circuit and appellate courts. Mrs. Firestone and her son, Russell Firestone, III, filed the present action in the district court against Russell Firestone, Jr., and the Cleveland Trust Company,[2] the trustee of several trusts for which Russell Firestone, Jr., is the beneficiary. Mrs. Firestone and her son seek money damages, declaratory and injunctive relief for the alleged failure of her former husband to meet his obligations under the divorce decree, and for Cleveland Trust's refusal to pay the support obligations of Russell Firestone, Jr., out of trust proceeds.

On February 25, 1974, the Circuit Court of Dade County, Florida, issued a final judgment of dissolution of marriage between Myrna Firestone and Russell A. Firestone, Jr. The final judgment incorporated a property settlement agreement executed by Mr. and Mrs. Firestone, and awarded custody of their child, Russell, III, to Mrs. Firestone. The property agreement imposed alimony and child support obligations upon Russell Firestone, Jr., and provided for the sale or division of jointly held personal and real property. The duties and obligations of both parties were numerous, and performance of those duties necessarily extended over a number of years.

Mrs. Firestone filed a motion for contempt on December 26, 1975, in the Dade County Circuit Court alleging that Mr. Firestone had failed to abide by the settlement agreement incorporated into the divorce decree. The Dade County Circuit Court retained jurisdiction over the case pursuant to Fla.Stat. §§ 61.13 and 61.14. The motion alleged Russell Firestone, Jr. was delinquent in the payment of alimony, child support, attorney fees, and miscellaneous financial obligations amounting to a substantial sum. A hearing on the motion on January 8, 1976, was continued until February 27, 1976, and continued again until March 5, 1976, with no order entered. Mrs. Firestone amended her complaint on January 18, 1977, to allege only a violation of the settlement agreement concerning mortgage payments on the marital home on La Gorce Island, Florida. On March 11, 1977, a hearing was conducted on the sale of the La Gorce Island property, but no order resulted. Finally, on May 19, 1977, Mrs. Firestone filed a motion for voluntary dismissal without prejudice, which was granted by the Dade County Circuit Court.

Next Mrs. Firestone, individually and on behalf of her minor son Russell, III, filed the present action on February 14, 1978, in the district court. The complaint, grounded upon diversity jurisdiction, named Russell Firestone, Jr. and the Cleveland Trust Company as defendants and contained seven claims for relief. Claim I alleged Russell Firestone, III was a beneficiary of the Harbel Trust,[3] asserted that Cleveland Trust's mismanagement and waste had caused loss to the corpus and income, and demanded an accounting and replacement of the sums lost. Claim II accused Cleveland Trust of filing a complaint in an Ohio state court for the purpose of insulating itself from liability to the trust beneficiaries for past and

---

1. The district court dismissed claims III through VII of the complaint for lack of jurisdiction. Before the filing of the notice of appeal Claims I and II of the complaint were dismissed by plaintiffs without prejudice.

2. The Cleveland Trust Company changed its name to AmeriTrust after this action was filed.

3. The Harbel Trust was established by Harvey S. Firestone, Sr., the great-grandfather of Russell, III. Russell Firestone, Jr. is a beneficiary of this trust which is administered by Cleveland Trust.

future breaches of its fiduciary duties. This second claim sought an injunction restraining Cleveland Trust from continuing the state court action or modifying the trust agreement, demanded removal of Cleveland Trust as the trustee, and requested compensatory and punitive damages.

Claims III through VII of the complaint are the subject of this appeal. Russell Firestone, III, through his mother, brought Claim III against Cleveland Trust. He alleged that his claims for support and maintenance from his father were enforceable against Cleveland Trust and, as a "third-party beneficiary of the Separation Agreement," all the unfulfilled provisions of the agreement were enforceable against Cleveland Trust. The alleged breaches in Claim III were similar to those in the contempt motion filed in the Dade County Circuit Court in December, 1975. Russell Firestone, III sought a money judgment from Cleveland Trust for accrued obligations of support, a declaration of his "rights and interests in and to the interests of defendant, Russell A. Firestone, Jr." in the various trusts, and an injunction against any further trust payments to his father "until and after the total sum due and owing for the support of Russell A. Firestone III, as determined by this court" was paid by Cleveland Trust. The fourth claim against Cleveland Trust made by Mrs. Firestone in her capacity as the mother of her minor son contained basically the same allegations and requested relief as Claim III.

Mrs. Firestone individually made the fifth claim against her former husband and Cleveland Trust to recover accrued sums and items owed on the obligations and support duties of Mr. Firestone under the agreement and decree. Claim V alleged many breaches of the agreement and demanded judgment against Russell Firestone, Jr., and Cleveland Trust in excess of $1,362,500 for accrued support obligations as determined by the court, a declaration of Mrs. Firestone's rights and interests in the Firestone trusts, and an injunction restraining Cleveland Trust from making any trust payments until the support for Mrs. Firestone was paid.

Claim VI, brought by Mrs. Firestone, and Claim VII, brought by her son, alleged that Cleveland Trust knew the obligations of Mr. Firestone under the divorce decree, that Cleveland Trust intentionally prevented the performance of these support obligations, and that Cleveland Trust continually advised Russell Firestone, Jr. to breach his support obligations under the agreement. They demanded compensatory and punitive damages against Cleveland Trust.

On March 13, 1978, Russell Firestone, Jr. filed a motion to dismiss the complaint alleging, *inter alia*, that the district court should abstain from exercising jurisdiction over the complaint. Cleveland Trust filed a motion on April 28, 1978, requesting dismissal of Claims III through VII on the grounds of federal abstention.

Prior to the district court's ruling on these motions, Russell Firestone, Jr., filed a motion for contempt against Mrs. Firestone in the Dade County Circuit Court in April 1978. The Florida Circuit Court conducted a hearing on the motion and issued an order on May 22, 1978. The order found Mrs. Firestone in contempt for refusing to execute an agreement for the sale of jointly held farm property at a price previously agreed upon, and relieved Mr. Firestone from paying further alimony until Mrs. Firestone executed the sales agreement and purged herself of contempt. Mrs. Firestone filed a motion for rehearing and to vacate the contempt order, which was denied by the Circuit Court on June 14, 1978. Mrs. Firestone subsequently appealed the contempt order to the Florida District Court of Appeals.

While the Florida appeal was pending, on September 7, 1978, the district court dismissed Claims III through VII of the complaint in the present case, declining to exercise jurisdiction because the settlement agreement was at the core of Claims III–VII, the issues raised therein were closely associated with domestic relations issues, and the 1974 divorce decree was still the subject of active litigation in the Florida state courts. In his order the district judge

quoted the following from the Florida circuit court order of June 14, 1978:

> It appears from the Motions and Affidavits filed on her behalf that she is proceeding in other Courts in other jurisdictions for relief concerning the Final Judgment entered in the above-styled cause. The Respondent, MYRNA O'DELL FIRESTONE, may proceed at any time under the Florida Rules of Civil Procedure on a Contempt Notice to enforce any provision of the Final Judgment in the above-styled cause in this Court.

And further, the Florida state court stated:

> The Respondent, MYRNA O'DELL FIRESTONE, is hereby given leave to file any Contempt Notice against Petitioner or any Motion to enforce the Final Judgment entered in the above-styled cause and the Agreement entered into between the parties and approved and confirmed by said Final Judgment at any time and she may bring to the attention of the Court by proper pleading any issue involved in said Agreement entered between the parties and the Final Judgment entered in the above-styled cause approving said Final Judgment. (The Respondent has taken one (1) Voluntary Dismissal under Florida Rules of Civil Procedure but she is entitled to proceed again on contempt against the Petitioner and on any other issue mentioned above one (1) more time before she is barred from proceeding further on the same matters involved when a second Voluntary Dismissal is taken).

Ultimately the Florida Court of Appeals on May 29, 1979, upheld the contempt order of the circuit court and the suspension of alimony payments by Russell Firestone, Jr. *Firestone v. Ferguson*, 372 So.2d 490 (Fla. Dist.Ct.App.1979). After Mrs. Firestone executed the sales agreement, a Florida circuit court purged her of contempt. As a result of these proceedings, Mr. Firestone was relieved from paying any monthly alimony from May 22, 1978, until August 31, 1979.

## II

■ Although a domestic relations case may meet the technical requirements for diversity jurisdiction, federal courts traditionally have refrained from exercising jurisdiction over cases which in essence are domestic relations disputes. *Gray v. Richardson*, 474 F.2d 1370, 1373 (6th Cir. 1973); *Gargallo v. Gargallo*, 472 F.2d 1219, 1220 (6th Cir.), *cert. den.*, 414 U.S. 805, 94 S.Ct. 77, 38 L.Ed.2d 41 (1973); *Harris v. Turner*, 329 F.2d 918, 923 (6th Cir.), *cert. den.* 379 U.S. 907, 85 S.Ct. 202, 13 L.Ed.2d 180 (1964). Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court. *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973).

■ Valid reasons have been given in support of federal courts abstaining from exercising jurisdiction over domestic relations cases. The field of domestic relations involves local problems "peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts." *Buechold v. Ortiz*, 401 F.2d 371, 373 (9th Cir. 1968). "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852, 34 L.Ed. 500 (1890); *Magaziner v. Montemuro*, 468 F.2d 782, 787 (3rd Cir. 1972). Because state courts historically have decided these matters, they have developed a proficiency and expertise in these cases and a strong interest in disposing of them. *Solomon v. Solomon*, 516 F.2d 1018, 1025 (3rd Cir. 1975); *Cherry v. Cherry*, 438 F.Supp. 88, 90 (D.Md.1977). Some states now have specialized courts which adjudicate only domestic relations cases and are better suited to process the large volume of such cases. See for example, Ala. Code § 12–17–70 (Supp.1981); Cal.Civ.Pro. Code § 1740 *et seq.* (West, Supp.1981); La. Rev.State.Ann. 13:1138 (West, Supp.1981); N.Y.Family Ct. Act §§ 411, 511, 652 (McKinney); Ohio Rev.Code Ann. § 2301.03 (Page, Supp.1981).

For similar reasons federal courts have long abstained from exercising jurisdiction over the administration of trusts and estates in favor of state courts. *Tonti v. Petropoulous,* 656 F.2d 212 (6th Cir. 1981); *Starr v. Rupp,* 421 F.2d 999 (6th Cir. 1970); *Ewald v. Citizens Fidelity Bank,* 242 F.2d 319 (6th Cir. 1957); *Magaziner v. Montemuro, supra; Reichman v. Pittsburgh National Bank,* 465 F.2d 16, 18 (3rd Cir. 1972). The policies underlying federal abstention are especially relevant where an action is pending in state court over the administration of the same trust or estate involved in the federal suit. *Ewald, supra.*

■ It is incumbent upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated. The mere obtaining of a divorce decree, without more, does not remove the case from the arena of domestic relations and permit the intervention of federal courts to adjudicate issues unaffected by the decree. *Solomon v. Solomon, supra,* at 1024.

In the present case the district court relied on a series of cases analyzing the abstention question in terms of whether a case not precisely within the jurisdictional exception nevertheless verged on the exception to such a degree that abstention was appropriate. See *Sutter v. Pitts,* 639 F.2d 842 (1st Cir. 1981); *Bossom v. Bossom,* 551 F.2d 474 (2nd Cir. 1976); *Kamhi v. Cohen,* 512 F.2d 1051 (2nd Cir. 1975); *Armstrong v. Armstrong,* 508 F.2d 348 (1st Cir. 1974); *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509 (2nd Cir. 1973). In *Phillips, Nizer* the plaintiff, a law firm representing the former wife, sought to recover from the former husband attorney fees stemming from the divorce litigation, but the Second Circuit felt this was a strong case for abstention. 490 F.2d at 515–16. The subject of the suit in *Armstrong v. Armstrong* was a default on a note and foreclosure of a mortgage on property securing the note; however, the note was given pursuant to a property settlement incorporated into a divorce decree and the

installment payments were intended as alimony and child support. The *Armstrong* court realized that in a narrow sense it could adjudicate the obligations vested under the note and mortgage, but that a decision whether to modify the agreement or enforce the default would require a determination of the former husband's continuing support obligations, a determination traditionally made by state courts. 508 F.2d at 350. *Kahmi v. Cohen* concerned a former husband's suit against a receiver and sequester appointed by a state court to consolidate all the former husband's property available for fulfilling support obligations imposed by a divorce decree. While the complaint was limited to setting aside the receiver's seizure of the former husband's retirement fund, nonetheless *Kamhi* held the action impinged upon the matrimonial jurisdiction of the state courts. 512 F.2d at 1056. The Court in *Bossom v. Bossom* declined jurisdiction over an action found to be on the verge of the exception where the former husband sought to nullify a stipulation incorporated into a divorce decree tying possession and disposition of the marital home to the former husband's child visitation rights. 551 F.2d at 475. Finally, *Sutter v. Pitts* involved a former wife's allegations that her former husband and his new wife had violated her civil rights by deliberately disobeying visitation and custody orders of a state court. The court of appeals upheld the district court's conclusion that the former wife's civil rights action really sought a determination of her rights to custody over her child, and that the close relation of the claims to the jurisdictional exception required abstention. 639 F.2d at 843. Although the complaints in these cases contained claims superficially outside the domestic relations exception, the underlying issues in each complaint were found to be verging upon or closely related to the jurisdictional rule.

### III

■ Applying the analysis of these cases to the present controversy, a close examination of appellants' Claims III–VII reveals

that they actually are seeking a determination of the past, present and future duties and obligations of Russell Firestone, Jr., under the settlement agreement. Although the claims are phrased in terms of appellants' rights and interests in the various Firestone trusts, those alleged rights and interests are based primarily upon the alleged unfulfilled support obligations of Mr. Firestone. Even Claims VI and VII, which allege that Cleveland Trust interfered with Mr. Firestone's fulfillment of his support obligations, are integrally tied to the domestic relations issue because the district court first would have to determine what and how much his support obligations are. Essentially appellants are seeking to compel Mr. Firestone and Cleveland Trust to use his trust income to meet his support obligations.

Appellants' attempts to compare this action to cases which simply enforce accrued and unmodifiable alimony and child support is contradicted by the many alleged breaches of the agreement and the sweeping relief sought from the district court. In addition to alimony and child support, appellants allege that Mr. Firestone has failed to comply with other provisions of the agreement requiring the establishment of a trust fund for Russell Firestone, III, payment of education expenses, country club dues, house notes, property maintenance, taxes, unpaid bills incurred prior to the divorce, attorney fees, and accountant fees. None of the sums claimed by appellants have been reduced to judgment by a Florida state court. See *Maner v. Maner*, 401 F.2d 616 (5th Cir. 1968). Presumably the district court would have to hear extensive evidence on the parties' personal needs and finances, and would have to interpret and apply the provisions of the divorce decree to determine what sums are due the appellants, a task better suited for the state courts. If the declaratory and injunctive relief requested by appellants were granted, the district court periodically might have to monitor the appellees' continued compliance with the decree, could be called upon to punish non-

compliance with contempt, and generally would have to assume the broad equitable powers of a state divorce court. *Morris v. Morris*, 273 F.2d 678, 681–82 (7th Cir. 1960).

Appellants ascribe a talismanic effect to Florida law holding accrued support obligations to be unmodifiable, arguing that a federal court may abstain from enforcing support obligations in a divorce decree only where past-due alimony and child support are subject to modification. As stated above, however, this action concerns not only accrued alimony and child support, but also claims for undetermined sums from other financial obligations and duties which appellants were requesting the district court to assess. Furthermore, shortly after this complaint was filed, a Florida state court found Mrs. Firestone in contempt of the divorce decree and relieved Mr. Firestone from paying alimony. *Firestone v. Ferguson*, 372 So.2d 490 (Fla.Dist.Ct.App. 1979). Appellants contend that the district court could not look to events subsequent to the filing of the complaint in determining whether to abstain from exercising jurisdiction. A significant part of the relief requested was a prayer for declaratory and injunctive relief which would affect the present and future conduct of the appellees. The request for injunctive relief, therefore, permitted the district court to consider the state court proceedings begun shortly after the filing of appellants' complaint. *Fay v. Fitzgerald*, 478 F.2d 181, 183 (2d Cir. 1973). Declaratory and injunctive relief compelling Cleveland Trust to pay Mr. Firestone's support obligations from trust income would have interfered with the pending state court proceedings and conflicted with the Florida contempt order relieving Mr. Firestone from paying further alimony. Under these circumstances, where appellants had ample opportunity to assert their claims under the divorce decree in the Florida state courts,[4] the district court acted properly in declining jurisdiction. *Kenner v. Morris*, 600 F.2d 22, 24 (6th Cir. 1979).

---

4. See the previously quoted Florida Circuit Court order of June 14, 1978, *supra*.

Finally, appellants have stated in their brief that an action is presently pending in the Court of Common Pleas of Cuyahoga County, Ohio, in which Cleveland Trust, Russell Firestone, Jr., and Russell Firestone, III, are parties. Appellants have admitted that Claims I and II of the complaint in the present case are substantially similar to the claims filed by Russell Firestone, III, in the Ohio state action. Thus, not only were proceedings pending in a Florida state court involving the divorce decree, but also proceedings were pending in an Ohio state court involving the administration of the trusts. Appellants have made no claim that they do not have the opportunity to assert their interests in the trusts in the pending Ohio state court action. Any relief granted by the district court under Claims III through VII would have had the substantial likelihood of interfering with the pending Ohio proceedings as well as the Florida proceedings. *See Ewald v. Citizens Fidelity Bank, supra.*

The order of the district court dismissing Claims III through VII of the complaint is affirmed.