**Jeffrey Frank TAYLOR, Plaintiff,**

v.

**Susan Jeanne WETTSTEIN, Defendant.**

**No. C–3–85–550.**

United States District Court, S.D. Ohio, W.D.

Oct. 19, 1989.

Carol J. Holm, Miamisburg, Ohio, for plaintiff.

Susan Jeanne Wettstein, Congerville, Ill., for defendant.

**DECISION AND ENTRY CONCLUDING THE COURT HAS JURISDICTION AND OVERRULING THE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DOC. # 8); FURTHER PROCEDURES ORDERED OF PLAINTIFF**

RICE, District Judge.

This matter is before the Court on Plaintiff's Motion for Default Judgment under Federal Rule of Civil Procedure 55(a) for Defendant's failure to plead or otherwise defend against Plaintiff's claim (Doc. # 8). The Plaintiff initially sought a Temporary Restraining Order (Doc. # 2), which the Court denied as prohibited by the Anti–Injunction Act, 28 U.S.C. § 2283 (Doc. # 3). In the Court's Decision and Entry dated August 15, 1985 denying same, the Court instructed the Plaintiff to file a Memorandum upon the question of the Court's subject matter jurisdiction with respect to Plaintiff's claim seeking a declaratory judgment as to the controlling effect of an Ohio Common Pleas Court decision concerning Plaintiff's child support obligations. The Plaintiff responded with a Memorandum to Show Cause (Doc. # 4) that Plaintiff had a right to bring this action into federal court based upon diversity of citizenship and satisfaction of the $10,000 amount in controversy requirement.[1]

For the reasons briefly set forth below, while the Court finds it has subject matter jurisdiction of the Plaintiff's claim, the Court holds that the relief which Plaintiff seeks is not available under the laws of the State of Ohio and therefore Plaintiff's Motion for Default Judgment must be overruled.[2] The Court will separately address

---

1. The Plaintiff claims the amount in controversy is $27,000, the difference between what Defendant claims is owing in a child support arrearage suit in Illinois, ($30,000) and what Plaintiff claims he actually owes ($3,000). Claims filed before May 19, 1989, do not have to meet the $50,000 amount in controversy requirement under 28 U.S.C. § 1332 (Supp.1989); diversity jurisdiction can be satisfied by pleading complete diversity of citizenship and an amount in controversy of $10,000 or more. *See* 28 U.S.C. § 1332 (Supp.1989) (*amending* 28 U.S.C. § 1332 (1958)).

2. The Court is compelled by the *Erie* doctrine to apply Ohio law in this case. The applicable provision of the Ohio Rev.Code, § 3115.06 provides:

> Duties of support applicable under §§ 3115.01 to 3115.34, inclusive, of the Revised Code, are those imposed under the laws of any state where the obligor was present for the period during which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

The Plaintiff, the obligor herein, does not dispute that he was living in Ohio during the peri-

below the subject matter jurisdiction of the Court and the merits of Plaintiff's claim for declaratory judgment, after a brief sketch of the facts of the case as gleaned from Plaintiff's Complaint and other pleadings filed in this case.[3]

## A. THE FACTS

Plaintiff, Frank Jeffrey Taylor, and Defendant, Susan Jeanne Wettstein, were granted a Divorce Decree on August 5, 1970 (*See* Doc. # 1, p. 2). As part of said Divorce Decree, Plaintiff Taylor was ordered to pay child support in a sum, the amount of which was undisclosed in Plaintiff's Complaint, directly to Defendant Wettstein (*Id.*). On March 19, 1971, the Circuit Court of Cook County, Illinois, modified its previous Order of Child Support by reducing the amount of support to $335 per month (*Id.*). Several years later, on August 22, 1974, Defendant filed a Petition for Child Support and Arrearages under the Illinois Uniform Reciprocal Enforcement of Support Act ("URESA"), stating that she now believed her ex-husband, the Plaintiff herein, to be residing in Dayton, Ohio (*See* Doc. # 9, Exh. A). As a result thereof, on August 29, 1974, the Woodford County Circuit Court of Illinois issued a certificate transmitting Defendant Wettstein's Petition for Support to the Montgomery County Court of Common Pleas of Ohio (*See id.*).

On September 24, 1974, the Common Pleas Court of Montgomery County held a hearing at which Plaintiff personally appeared and found that Plaintiff owed a duty of support to his four dependents as named in Defendant's Petition (*See* Doc. # 9, Exh. B). Accordingly, the Montgomery County Common Pleas Court of Ohio issued a judgment ordering Plaintiff to pay $70 per week in child support to the Montgomery County Bureau of Support commencing October 8, 1974 (*Id.*). At various times, since September 24, 1974, the Montgomery County Common Pleas Court reviewed and modified its Court Order of

September 24, 1974 (*See* Doc. # 9, Exh. C, *et seq.*).

Years later, on October 16, 1984, Defendant Wettstein commenced an action in the Illinois court, Case No. 84–D–77, requesting the court to "enforce or modify" the Judgment for Divorce and the subsequent Order of modified child support entered in 1971 in Cook County, Illinois (*See* Doc. # 1, p. 3). The Plaintiff's attempts to enjoin this action in the state court by filing a Motion for a Temporary Restraining Order in the United States District Court for the Southern District of Ohio, as stated above, were unsuccessful. Thereafter, the Woodford County Court of Illinois issued an Order on July 5, 1986 finding that the previous Illinois Order as to child support entered by the Circuit Court of Cook County remained ·in full force and effect (*See* Doc. # 13); that the Woodford County, Illinois court was not bound to accept the Ohio modifications adjunct to the Ohio court's response to the URESA action commenced by the Petition of the Defendant; that an arrearage in child support under the original Illinois Order existed through calendar year 1985 in the amount of $30,920.91; and that judgment ought to enter in favor of Petitioner Wettstein and against Respondent Taylor in that amount. The Illinois court further entered a modification of the previous Illinois Child Support Order upon finding that three of Plaintiff's children had reached the age of majority and to this end adjusted the amount of child support for Plaintiff's remaining child to $275 per month commencing at the beginning of November, 1985. Additionally, the Illinois court ordered Plaintiff to pay $578 to Defendant Wettstein for medical expenses incurred on behalf of his minor children and ordered Plaintiff to pay $2,400 in attorney's fees incurred by Defendant Wettstein in bringing the petition to enforce the arrearages in child support (*See* Doc. # 13).

---

od for which child support payments were sought by the Defendant, Susan Wettstein.

**3.** Since Defendant has failed to plead or otherwise defend in this action, the Court must rely on the facts as set forth by the Plaintiff in his various pleadings.

The Plaintiff continues to maintain and would like this Court to issue a declaratory judgment to the effect as to the following:

1. That the Defendant has voluntarily submitted herself to the law and the courts of the State of Ohio and that she has enjoyed the full benefits of said law and courts in establishing and enforcing orders and judgments of support;

2. That, as a result of invoking Ohio law, the Defendant under the Full Faith and Credit Provisions of Article 4, Section 1 of the United States Constitution is bound by the judgments of the courts of the State of Ohio on the matter of child support and child support arrearage from and after the date she invoked said law and submitted herself to said court;

3. That Defendant's voluntary and conscious act of invoking the law of the state of Ohio and her failure to object to the judgments of the courts of the state of Ohio constitute a waiver of her rights to proceed under the law of the state of Illinois to obtain a judgment, any part of which involves child support or child support arrearage from and after the date she invoked the law of the state of Ohio;

4. That due to the Defendant's voluntary acts invoking and enjoying Ohio law, she is estopped from alleging that a child support arrearage could exist under Illinois law from and after the date she invoked the law of the State of Ohio;

5. That any and all claims for child support or child support arrearage from and after August 22, 1974, shall be barred in the courts of the State of Illinois under the doctrine of *res judicata;*

6. That the courts of the State of Illinois are required to give full faith and credit to the judgments of the courts of the State of Ohio as such judgments relate to child support or child support arrearage from and after August 22, 1974; and

7. That the Defendant pay the court costs of $60 and service fees of $16.67 to the Plaintiff, which amounts are sum certain.

## B. SUBJECT MATTER JURISDICTION

Traditionally, federal courts have refused to exercise jurisdiction in domestic relations matters, regardless of whether there is diversity of citizenship and the presence of the requisite amount in controversy under 28 U.S.C. § 1332. *See, Barber v. Barber,* 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858); *Firestone v. Cleveland Trust,* 654 F.2d 1212 (6th Cir.1981). It is axiomatic that the field of domestic relations involves local problems "peculiarly unsuited to control by federal courts." 654 F.2d at 1215. *See also Drewes v. Ilnicki,* 863 F.2d 469, 471 (6th Cir.1988). Nonetheless, some qualifications of the domestic relations exception to diversity jurisdiction do exist. For example, the Sixth Circuit has recognized federal diversity jurisdiction exists with respect to suits that are actually tort or contract claims having only domestic relations overtones. *See Firestone v. Cleveland Trust,* 654 F.2d at 1216. In addition, other courts have recognized an exception for diversity cases involving a non-frivolous constitutional claim. *See Rosenstiel v. Rosenstiel,* 278 F.Supp. 794, 799 (S.D.N.Y.1967) *fol. Hernstadt v. Hernstadt,* 373 F.2d 316, 317–18 (2d Cir.1967). On the other hand, suits brought under the guise of federal question jurisdiction, which are in substance domestic relations matters, generally will not be entertained in federal court. *Firestone v. Cleveland Trust,* 654 F.2d at 1215.

More recently, the Sixth Circuit announced that federal courts can exercise jurisdiction over the enforcement of support arrearages, as long as the arrearages award is not modifiable or does not require interpretation of an ongoing divorce dispute. *See Drewes v. Ilnicki,* 863 F.2d at 471.

■ In view of the foregoing, this Court finds it has jurisdiction for three reasons, to wit: 1) This case involves the question as to which state's child support order, Illinois or Ohio, is enforceable against the Plaintiff. As part and parcel of the federal court's jurisdiction to enforce support arrearages under *Drewes v. Ilnicki,* this Court finds it has jurisdiction to decide on

Plaintiff's Motion for Default Judgment which state's child support order is enforceable against the Plaintiff. 2) Since the Plaintiff claims that by enforcing the Cook County Order for Child Support against him, the Illinois court is violating the Full Faith and Credit Clause of Article 4, Section 1 of the United States Constitution, this Court finds it has diversity jurisdiction over a non-frivolous constitutional claim. *See Rosenstiel v. Rosenstiel,* 278 F.Supp. 794. 3) The Court believes that by exercising its jurisdiction over same, it does not tread on local problems "peculiarly unsuited to control by federal courts." *See Firestone v. Cleveland Trust,* 654 F.2d at 1215.

## C. THE MERITS

■ Having established the Court's subject matter jurisdiction, the Court finds the Plaintiff is not entitled to the relief he seeks. Simply put, the law in Ohio and Illinois is that the amount of child support ordered in an initial proceeding under URESA must conform to the amount determined in the previous divorce case. *See Nazer v. Klingaman,* No. 01–82–23, 1982 WL 6701 (Ohio App. Ottawa County, December 30, 1982) (available on LEXIS, States file) *fol. San Diego v. Elavsky,* 58 Ohio St.2d 81, 388 N.E.2d 1229 (1979); *In re Marriage of Gifford and Gifford,* 122 Ill.2d 34, 118 Ill.Dec. 452, 521 N.E.2d 929 (1988); and *Coons v. Wilder,* 93 Ill.App.3d 127, 48 Ill.Dec. 512, 416 N.E.2d 785 (2d Dist.1981).

Ohio Revised Code § 3115.27 provides with respect to the effect of prior divorce proceedings on a URESA proceedings in a responding court:

> If the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the complaint being heard, the court must conform its support order to the amount allowed in the other action or proceeding.

The URESA statute in Illinois contains a similar provision. *See Illinois Annotated Statutes,* Chapter 40, Section 1230 (Smith–Hurd 1988). The gist of these statutes is that if the decree of divorce and a child support order have been entered *prior* to the URESA proceeding being initiated in the court of a foreign state, the court of said foreign/responding state is without the power to change that child support order.

■ In the case herein, the Cook County Court of Illinois issued a Decree of Divorce which included a provision for child support. According to Plaintiff's own admission, the Cook County Court of Illinois modified its earlier child support provision obligating Plaintiff to contribute $335 a month in child support. Unless Plaintiff can demonstrate otherwise, the Court must assume that the 1971 hearing by the Cook County Court modifying Plaintiff's child support obligation to $335 a month was concluded before the URESA hearing was commenced in the Montgomery County Court in 1974 and therefore the Montgomery County Court was bound to conform its child support order to the amount set by the Cook County Court under Ohio Rev. Code § 3115.27. In this same connection, this Court finds that the Montgomery County Court (the Ohio court) was bound to give full faith and credit to the Cook County Court (the Illinois court), not vice versa as Plaintiff argues. Hence, the Defendant is bound by the Illinois Court Order issued June 5, 1986 (*See* Doc. # 13), modifying its earlier child support order from 1971. The Ohio court was without the power to modify the support order of the Illinois court.

WHEREFORE, based upon the aforesaid, Plaintiff's Motion for Default Judgment is overruled. The Plaintiff has 30 days from the date of this Order, to show cause why this matter should not be dismissed.