Walter J. DREWES, Plaintiff–Appellee, Cross–Appellant,

v.

Brenda B. ILNICKI, Defendant–Appellant, Cross–Appellee.

Nos. 87–4147, 88–3010.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 15, 1988.

Decided Dec. 20, 1988.

Harland M. Britz (argued), Britz & Zemmelman, Toledo, Ohio, for defendant-appellant, cross-appellee.

Thomas D. Drake (argued), Drake, Phillips, Kuenzli & Clark, William E. Clark, Findlay, Ohio, for plaintiff-appellee, cross-appellant.

Before NELSON and BOGGS, Circuit Judges, and ENSLEN, District Judge.[*]

BOGGS, Circuit Judge.

Appellee/Cross–Appellant Walter J. Drewes appeals the district court's *sua sponte* dismissal of his complaint alleging intentional infliction of emotional distress and interference with employment. Appellant/Cross–Appellee Brenda B. Ilnicki appeals the district court's *sua sponte* dismissal of her counterclaim seeking enforcement of a Florida judgment against Mr. Drewes for arrearages in child support. We reverse.

I.

Walter Drewes ("plaintiff") and Brenda Ilnicki ("defendant") were formerly husband and wife. In 1980, in an alimony action involving the parties, the Common Pleas Court of Hancock County, Ohio, entered a final order which provided for the

visitation rights of the parties at the time, as well as in the event of relocation of one of the parties. This judgment also stated that the "the issues involving alimony, custody, support and visitation shall remain under the jurisdiction of this Court unless by agreement of both parties." Plaintiff and Defendant thereafter obtained a dissolution of their marriage in Henry County, Ohio, in September 1980, which incorporated the foregoing terms.

Ms. Ilnicki subsequently moved to Clearwater, Florida. On July 14, 1981, she instituted a civil action in the Circuit Court of Pinellas County, Florida, Civil Division, to collect money allegedly owed her by plaintiff for back alimony and child support. Mr. Drewes entered his appearance in the Pinellas County action by filing a motion on December 20, 1983 for Christmas visitation and an alteration of visitation rights. Plaintiff Drewes also filed a motion for summer visitation on May 23, 1984. On September 11, 1984, the Circuit Court of Pinellas County entered a final judgment against Mr. Drewes for arrearages of alimony, child support, and medical expenses in the amount of $45,569.00.

On October 14, 1987, citing diversity under 28 U.S.C. § 1332, plaintiff filed a complaint against defendant in the U.S. District Court for the Northern District of Ohio alleging intentional infliction of emotional distress and interference with employment. Plaintiff alleges that after the divorce defendant took the parties' children to Florida, concealed their whereabouts, and has prevented the plaintiff from exercising his visitation rights since 1981. Plaintiff also alleges that the defendant telephoned and wrote letters to plaintiff's place of employment which contained falsities about the plaintiff. On October 28, 1987, defendant filed an answer and counterclaim, seeking to enforce the Florida judgment against plaintiff for arrearages in child support, alimony, and medical expenses.

On November 18, 1987, without a hearing, the District Court *sua sponte* dis-

---

[*] The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation.

missed the complaint and counterclaim, concluding that it lacked subject matter jurisdiction under the "domestic relations exception" to federal diversity jurisdiction. Both plaintiff and defendant appeal this dismissal.

## II.

28 U.S.C. § 1332(a)(1) grants subject matter jurisdiction to federal district courts in actions between citizens of different states involving matters in controversy exceeding $10,000 exclusive of costs and interest. However, in 1859, the Supreme Court announced an exception to the use of the diversity jurisdiction for matters concerning "the subject of divorce, or for the allowance of alimony." *Barber v. Barber*, 62 U.S. 582, 584, 16 L.Ed. 226 (1859). Though the exception was not explained at the time, it has been refined and continues to the present day because the field of domestic relations involves local problems "peculiarly unsuited to control by federal courts." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir.1981). However, this exception does not apply to suits that are actually tort or contract claims having only domestic relations overtones. *Elam v. Montgomery County*, 573 F.Supp. 797, 801 (S.D. Ohio 1983); *see also Firestone*, 654 F.2d at 1216 ("It is incumbent upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated"); *Hooks v. Hooks*, 771 F.2d 935, 942 (6th Cir.1985) ("adjudication of the alleged civil rights violation to the extent it seeks damages does not require the court to exercise jurisdiction over or resolve any of those state law matters within the scope of the domestic relations exception").

In *Elam*, the district court declined to recognize the domestic relations exception because the plaintiff's § 1983 lawsuit concerning the wrongful deprivation of custody of his children did not ask the court to return custody or declare which party was a more fit parent, but simply to adjudicate a claim for tort damages. *Elam*, 573 F.Supp. at 801.

Other circuits have repeatedly held that a district court does not lose jurisdiction merely because intra-family aspects are involved, particularly when the cause of action is cognizable in tort. *McIntyre v. McIntyre*, 771 F.2d 1316, 1318 (9th Cir. 1985) (domestic relations exception to diversity jurisdiction does not apply to a claim of intentional tortious interference that did not implicate a question of spousal or parental status); *Raftery v. Scott*, 756 F.2d 335, 338 (4th Cir.1985) (district court has jurisdiction over damages action for intentional infliction of emotional distress where former husband alleges that former wife has taken custody of child illegally); *Bennett v. Bennett*, 682 F.2d 1039 (D.C.Cir. 1982) (federal court is competent to hear traditional tort cases even if they depend on the effect of various state court decrees determining custody). However, federal courts do not have jurisdiction over a claim where the tort damages action is a mere pretense and the suit is actually concerned with custody issues. *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir.1981).

Federal courts will also exercise jurisdiction over the enforcement of support arrearages. *Id.* at 564; *Dorey v. Dorey*, 609 F.2d 1128 (5th Cir.1980); *Wilson v. Wilson*, 532 F.Supp. 152, 154 (M.D.La. 1980), *aff'd*, 667 F.2d 497 (5th Cir.1981). However, a federal court does not have jurisdiction if the arrearages award is modifiable or requires interpretation of an ongoing divorce dispute. *Firestone*, 654 F.2d at 1217; *Olsen v. Olsen*, 580 F.Supp. 1569, 1571–72 (N.D.Ind.1984).

Applying this law to the case before us, it appears that the district court incorrectly dismissed the present actions, at least at this stage of the proceedings. Having before us, as did the district court, only the claim and counterclaim, it appears that the domestic relations exception to diversity jurisdiction clearly does not apply to the claims of intentional infliction of emotional distress and interference with employment.

The interference with employment cause of action is not even tangentially related to domestic relations. The federal courts may

not refuse jurisdiction merely because the parties were at one time in a marital relationship and the motive for the tort may spring from that source.

Further, the intentional infliction of emotional distress claim is a traditional tort action for damages. The facts of the present case are almost identical to those in *Raftery*, where the Fourth Circuit held that the federal courts had jurisdiction. Here the former husband is suing for damages because of the former wife's alleged "taking" of the child. Unlike *Jagiella*, on its face this cause of action is not an attempt to alter the custody arrangement by the use of a tort cause of action such as "alienation of a child's affection".

Ms. Ilnicki's counterclaim presents a closer question. Plaintiff has attempted to characterize Ilnicki's cause of action not as the enforcement of a set damage amount, and therefore cognizable under *Jagiella*, but as a claim that will require the court to become involved in the terms and the validity of the original divorce decree. The record before us now does not clearly show that Ms. Ilnicki's claim involves ongoing questions concerning the validity of the original divorce decree. Though the Ohio decree apparently stated that any issues involving alimony, custody, support, and/or visitation would remain under the jurisdiction of that Ohio court, this may be only a jurisdictional defense and may not involve the underlying reasons for the Ohio court's divorce judgment. The district court is, of course, free to consider whether the alleged defect based upon the Ohio court's pronouncement will defeat the ostensible Florida judgment. We cannot make that decision at this time on the face of the pleadings.

Therefore, after sifting through the claims, we determine that on its face this case does not fall within the domestic relations exception to diversity jurisdiction. The dismissal of the case by the district court is REVERSED and the case is remanded for full consideration by the district court.