891 F.2d 95
 Sherri ROGERS, Plaintiff-Appellant,
v.
William Bradford JANZEN, Ph.D.; William Bradford Janzen, a
Professional Psychology Corporation; National Union Fire
Insurance Company of Pittsburgh; Ralph Underwager;
Institute for Psychological Therapies; St. Paul Fire and
Marine Insurance Company; and Frank Gray, Defendants-Appellees.
 No. 89-3254.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 28, 1989.
 
 Richard Ducote and Erin L. Garriola, Richard Ducote & Associates, New Orleans, La., for plaintiff-appellant.
 Charles T. Weigel, Jr., Michael S. Guillory, Debra Fischman Cottrell, and Frederick R. Campbell, McGlinchey, Stafford, Mintz, Cellini, & Lang, New Orleans, La., for William Bradford Janzen.
 Garic K. Barranger, Covington, La., for Frank Gray.
 H. Martin Hunley, Jr., and Susan Northrop, New Orleans, La., for Ralph Underwager and Institute for Psychological Therapies.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before RUBIN, REAVLEY and KING, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 Sherri Rogers appeals from a summary judgment[1] dismissing without prejudice her diversity action seeking damages for emotional distress from her former husband for sexually abusing their daughter and for denying her access to the child, and from two witnesses who testified in the state child custody proceedings for malpractice resulting in emotional distress to her. We affirm the district court's judgment abstaining from exercising jurisdiction in this matter, and do not reach the merits of the summary judgment motions.
 
 
 2
 Rogers joins three groups of defendants: (1) Frank Gray, Jr. ("Gray"), her former husband; (2) William Bradford Janzen, his professional corporation, and the National Union Fire Insurance Company ("Janzen"); and (3) Ralph Underwager, the Institute for Psychological Therapies, and St. Paul Fire and Marine Insurance Companies ("Underwager"). Each participated in the custody proceedings as a result of which the state court awarded custody of Courtney Gray, the daughter of Rogers and Gray, to Gray. More important for the purposes of this action, each testified that Courtney had not been abused and was therefore essential to Gray's effort to obtain custody of Courtney.
 
 I.
 
 3
 Given the basis for our affirmance of the district court, it is necessary to review the state court proceedings in some detail. In December, the Louisiana Department of Health and Human Resources (DHHR) initiated an action in the Slidell City Court, sitting as the Juvenile Court for St. Tammany Parish, and took legal custody of Courtney Gray on the grounds that Gray had been accused of sexually molesting her during court-ordered visitation. On December 20, and again by a consent adjudication filed on January 8, 1985, the juvenile court awarded custody to the State; on January 19, Courtney was placed in the home of Gray's parents.
 
 
 4
 The Office of Human Development (OHD) then hired Janzen to perform psychological evaluations of Courtney Gray and her father and mother. These evaluations did not confirm the allegations of sexual abuse, and the juvenile court thereafter determined that it would be in Courtney's best interest to be removed from Rogers's custody. The court ordered Janzen to see Courtney, Gray, and Rogers to help them adjust to the changes in the child's custody. Although Rogers attended only one session, Janzen continued to treat Gray and Courtney until Rogers again alleged child abuse, whereupon Janzen and DHHR officials determined that an independent evaluation by another psychologist, Fontenelle, would be appropriate. After February 1987, Janzen again began treatment of Courtney, continuing until it was determined that she was well-adjusted, and also treated Gray for depression.
 
 
 5
 Proceedings began anew in juvenile court after Rogers renewed the child abuse charge in May 1986. In October, the court conducted hearings at which Janzen and Fontenelle testified that in their professional opinions there was no evidence that Courtney had been sexually abused by Gray. Underwager was called by Gray as an expert witness in the field of clinical psychology, was accepted by the court as an expert without challenge by the plaintiff, and testified that Courtney had not been abused by Gray. Janzen and Fontenelle recommended that Gray should eventually be given custody, and Underwager recommended that such custody be immediate.
 
 
 6
 Near the end of November, the juvenile court judge ordered Courtney transferred from her foster home, where she had been disruptive, to the physical custody of Rogers's parents, the Kidds. In December, the judge awarded physical custody to the Kidds, apparently in order to avoid further agitation by Rogers, and noted that although he was not required to determine whether or not Gray had sexually abused Courtney, his opinion was "that Courtney Gray was probably never molested by anyone." In February, Rogers allegedly became concerned that Courtney would view her as permitting or aiding Gray's sexual abuse, and, in order to avoid any suspicion of this by Courtney, Rogers relinquished Courtney to the DHHR. The court then granted physical custody to Gray's mother. In July, the court awarded full custody to Gray, and denied visitation by Rogers for the first six months thereafter. Rogers' application to the First Circuit Court of Appeal for remedial and supervisory writs was denied.
 
 
 7
 Rogers then initiated this suit in federal district court. She accused Janzen of negligence and psychological malpractice in his evaluation and treatment of Courtney, and Underwager of having acted negligently, intentionally, and in bad faith in preparing for and delivering his evaluation of Courtney. She later filed an amended complaint naming as defendants the insurers of Janzen, Underwager, and the Institute. The amended complaint also added Gray as a defendant, alleging that Gray had abused Courtney and had engaged in a continuous course of tortious conduct to deny Rogers access to the child and to cause Rogers emotional distress. Rogers claims damages for emotional distress and the severance of her relationship with her daughter. On motion by defendants for summary judgment, the district court decided that abstention would be appropriate, and that in the alternative the defendants's motions for summary judgment were well-taken.
 
 II.
 
 8
 Federal courts have long maintained a domestic relations exception to federal jurisdiction, founded on "the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts."[2] Because Rogers's claims sound in tort, they do not fall squarely within the traditional scope of the field of domestic relations. As this court observed, however, in Jagiella v. Jagiella,[3] the abstention issue should not be resolved by resort to "technical appellation," but rather by inquiry into "whether hearing the claim will necessitate the court's involvement in domestic issues, i.e., whether it will require inquiry into the marital or parent-child relationship."[4] Jagiella and like cases have endorsed the conclusion of Wright, Miller, and Cooper's leading treatise that "[e]ven in [domestic relations actions brought in tort] a federal court may well decline jurisdiction if the tortious conduct is part of an ongoing series of disputes centering around the marital relationship."[5]
 
 
 9
 The present case is not one in which "the court need only decide whether an already-set custody or child support award has been complied with, or whether the parties have committed acts that would be actionable even if everyone involved was [sic] unrelated."[6] As in Jagiella, this case in part concerns a claim for "damages for the alienation of [a child's] affection and resultant infliction of mental anguish."[7] Rogers claims damages for emotional distress and the loss of her relationship with Courtney caused by Gray's alleged sexual abuse and its furtherance by Janzen and Underwager. Although her claim against Gray cannot be reduced to a mere dispute arising from their marital relationship, its resolution would require the type of inquiry into the parent-child relationship that is better conducted by state courts. At the heart of Rogers's suit is the allegation that Gray has sexually abused their daughter, an allegation that was considered by the juvenile court in awarding custody and that Rogers concedes must be considered even in the assignment of visitation rights.[8] In order to supply the requested relief, a federal district court would be required to revisit the factual determination made prior to awarding custody, and if it reached a contrary conclusion to unsettle the basis of the custody and visitation decision reached and affirmed by the Louisiana courts; in the end, such a result would no doubt prompt a suit in state court by Rogers for custody and visitation reconsideration under the terms of article 147 and related provisions, thereby encroaching on the apparent state interest in determining custody and risking incompatible federal and state decrees.[9]
 
 
 10
 The claims against Janzen and Underwager similarly devolve from the dispute between Rogers and Gray and would require an intrusive federal inquiry into the parent-child relationship. In order to establish her negligence, intentional tort, or malpractice claims, Rogers would be required to prove the underlying sexual abuse allegation. Moreover, the state's ultimate award of custody to Gray and limitation of Rogers's visitation are indisputably the mechanisms by which Janzen and Underwager are alleged to have effected the termination of Rogers's relationship with Courtney. That all of Underwager's and much of Janzen's involvement consisted of participation in official court proceedings merely highlights the degree to which federal review would interfere with the authority of the juvenile court responsible under state law.
 
 
 11
 In Franks v. Smith,[10] this court affirmed the judgment of the district court that it lacked jurisdiction over a lawsuit for child custody brought by a child's temporary caretakers against her natural mother and various public officials. The suit, which in relevant part sought custody and damages for mental distress caused by the allegedly unlawful taking of the child, would have required adjudication of questions of abandonment and in-loco-parentis status. This court therefore deemed it a domestic relations dispute that fell within the province of state courts. Other circuits have reached the same conclusion in analogous cases. Thus, the Second Circuit, relying on the domestic relations exception, abstained from entertaining a suit by a law firm for attorney's fees against a client's former husband.[11] On like ground, the Third Circuit abstained from considering a civil rights suit against a state judge for vacating an ex parte appearance of counsel on behalf of children in custody adjudication.[12] While at least one author has stated the view that "[c]laims between a spouse and a third party that only tangentially relate to a domestic relations dispute are proper for federal court resolution,"[13] we cannot accept that statement unless it is literally confined to a claim that is tangent properly defined, that is touching the state domestic relations matter at but a single point. The particular circumstances of this case would require the review and reappraisal of much of the testimony already heard by the state court and, if the federal court then reached a different conclusion, would result in the resuscitation of an already litigated custody contest.
 
 
 12
 For these reasons, we AFFIRM the district court's judgment abstaining from exercising jurisdiction, expressing no opinion about other matters mentioned in the court's opinion.
 
 
 
 [1]
 711 F.Supp. 306 (E.D.La.1989)
 
 
 [2]
 Crouch v. Crouch, 566 F.2d 486, 487 (5th Cir.1978)
 
 
 [3]
 647 F.2d 561 (5th Cir. Unit B 1981)
 
 
 [4]
 Id. at 565; see also Goins v. Goins, 777 F.2d 1059, 1062-63 (5th Cir.1985)
 
 
 [5]
 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3609 at 467 (2d ed. 1984)
 
 
 [6]
 Rykers v. Alford, 832 F.2d 895, 900 (5th Cir.1987)
 
 
 [7]
 647 F.2d at 565
 
 
 [8]
 See La.Civ.Code Ann. art. 147 (West Supp.1989)
 
 
 [9]
 Cf. Rykers v. Alford, 832 F.2d at 899-900 (noting potential for state courts to maintain ongoing supervision and avoid piecemeal adjudication)
 
 
 [10]
 717 F.2d 183, 185 (5th Cir.1983)
 
 
 [11]
 Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509 (2d Cir.1973) (Friendly, J.)
 
 
 [12]
 Magaziner v. Montemuro, 468 F.2d 782 (3d Cir.1972)
 
 
 [13]
 Atwood, Domestic Relations in Federal Court: Toward a Principled Exercise of Jurisdiction, 35 Hastings L.J. 571, 618 n. 288 (1984) (emphasis added)