**David Ian McCULLOUGH and Jason Scott McCullough, two minor children by Pamela JORDAN, parent and next friend, Plaintiffs,**

v.

**James David McCULLOUGH and Mimi McCullough, Defendants.**

**No. 88–CV–74202–DT.**

United States District Court,
E.D. Michigan, S.D.

Jan. 29, 1991.

Beth Herr, Cambridge, Mass., for plaintiffs.

Gerald Padilla, Detroit, Mich., Stephen Moffett, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

HACKETT, District Judge.

This is a common law tort action in which plaintiffs, by their mother and next friend, seek injunctive relief and damages for assault, battery, infliction of emotional distress and negligence based upon alleged physical and sexual abuse occurring between 1980 and the summer of 1987. In their complaint, plaintiffs seek four million dollars in compensatory damages and eight million dollars as punitive damages from their father and his wife. Although the complaint states that plaintiffs seek injunctive relief, exactly what type of injunctive relief is not specified. Jurisdiction is premised upon diversity of citizenship.

## BACKGROUND

Plaintiffs David McCullough and Jason McCullough were born during the marriage of Pamela Jordan and James McCullough. That marriage ended in divorce by judgment of the Washtenaw County Circuit Court dated May 5, 1981. Custody of the plaintiffs was given to Pamela Jordan. Since the entry of the divorce judgment, however, an almost constant stream of civil action relating to issues of child custody, visitation, and child and spousal support has flowed into the Washtenaw Circuit Court.

Around August, 1984, a consent judgment was entered into between Pamela Jordan and James McCullough which allowed her to move to Seattle, Washington, with the minor plaintiffs. Issues of custody and visitation continued to be extensively litigated following this relocation. The Washtenaw Circuit Court has and continues to exercise jurisdiction over the case. Pamela Jordan attempted to bring these issues into the King County Court in Seattle, Washington, but that court declined the case in light of Washtenaw Circuit Court's continuing exercise of jurisdiction.

A review of the record in this case reveals that Pamela Jordan has denied James McCullough visitation on many occasions following her relocation. As a result, she has been found in contempt by Washtenaw Circuit Court Judge Conlin on numerous occasions. Based on the denials of visitation, Judge Conlin also ordered spousal support terminated and has, at various times, ordered child support payments to be put in escrow or abated.

In the spring of 1987, after refusing to send the children for Thanksgiving or Christmas visitation in 1986, and not having been in compliance with Judge Conlin's February, 1987, order to reinstate telephone visitation between the minor children and their father, which had been denied by Pamela Jordan since mid–1986, Pamela Jordan reported to the court that the minor plaintiffs had been physically and psychologically abused by their father.

At a July 1, 1987, hearing, Judge Conlin addressed Pamela Jordan's allegations. Noting that they came "awfully late" and after the court was attempting to enforce visitation, he characterized the allegations as suspect but, nevertheless ordered them to be investigated.

The parties stipulated to a neutral and independent evaluation by Dr. Elissa P. Benedek, M.D., a specialist of some renown, to determine if the children were being abused. During August, 1987, Dr. Benedek separately interviewed the two children, Pamela Jordan, James McCullough, and his wife Mimi. She also observed the children's interaction with Pamela Jordan and their interaction with their father and his wife, and their half-siblings. She also specifically asked questions regarding sexual abuse, even though none of the parties had, as yet, alleged this. Dr. Benedek concluded that the children had not been physically or psychologically abused.

At a hearing held on December 16, 1987, Judge Conlin found, based upon Dr. Benedek's report, that the children had not been abused. By written order entered January 5, 1988, Judge Conlin found that there was no abuse of the children. On March 23,

1988, Judge Conlin issued an order denying Pamela Jordan's motion to stop visitation and continued her motion for reconsideration of his finding that the children had not been abused. The motion for reconsideration remains continued through this date.

Pamela Jordan, on behalf of the minor plaintiffs, filed the instant action in this court on October 20, 1988. She had also appealed Judge Conlin's denial of her motion to stop visitation and was pressing charges against James McCullough with the Oakland County Prosecutor's Office for criminal sexual conduct based on the alleged sexual abuse of the children.

On May 1, 1989, following lengthy negotiations, the parties arrived at a settlement agreement in this case, which was placed on the record. The terms of the agreement were that James McCullough would agree to termination of his parental rights, would pay costs and $102,500.00, contingent upon Pamela Jordan's securing a termination of the criminal prosecution. On February 14, 1990, the court was informed through Pamela Jordan's attorneys that she would not perform or abide by the agreement. The court found, in connection with defendants' motion for sanctions, that plaintiff had breached the settlement agreement by failing to take the action that was required of her under the terms of the agreement. The court assessed sanctions against Pamela Jordan.

By order dated June 7, 1990, the Michigan Court of Appeals affirmed the Washtenaw Circuit Court's denial of the motion to stop visitation. The appellate court noted:

> By way of background, this case involves bitter custody and child support issues. Having reviewed the entire record, it appears that defendant's relationship with his two sons from his marriage to plaintiff has been destroyed. The parties have been before the trial court and this Court on numerous occasions. As noted by the trial court, this matter will, from the courts' perspective, only be resolved when the children turn eighteen.

The criminal case was also concluded when the magistrate refused to bind James McCullough over on criminal sexual conduct charges at a preliminary examination. The magistrate also refused to reinstitute the warrant, finding that to do so would constitute harassment. The circuit court and the Michigan Court of Appeals affirmed the magistrate's decision not to reinstitute the warrant.

Defendants have filed a motion for summary judgment of this case. Defendants cite two bases for summary judgment: (1) that the doctrine of collateral estoppel bars plaintiffs' claims; and (2) that this court lacks jurisdiction on the basis of the domestic relations exception to diversity jurisdiction. The second basis is, perhaps, better characterized as a motion to dismiss and the court will treat it as such. For the reasons stated below, defendants' motion to dismiss is granted.

## DISCUSSION

### I.

█ It has long been established that there exists an exception to the diversity jurisdiction of the federal courts for matters concerning "the subject of divorce, or for the allowance of alimony." *Barber v. Barber*, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859). This "domestic relations exception" to diversity jurisdiction has continued to develop and be refined over time. *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir.1988). The federal courts have, under this exception, declined to exercise jurisdiction over parent-child relations or custody disputes. *Hooks v. Hooks*, 771 F.2d 935, 942 (6th Cir.1985). The exception does not apply, however, to suits that are tort or contract claims, which seek damages and have "only domestic relations overtones." *Drewes*, 863 F.2d at 471; *Hooks*, 771 F.2d at 942.

█ Complaints containing claims which appear on the surface to fall outside of the "domestic relations exception," must still be examined to determine if they verge upon or are closely related to the exception and would, therefore, require abstention. *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1216 (6th Cir.1981). "It is incumbent

upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated." *Id.* A federal court may decline jurisdiction if the alleged tortious conduct is part of an ongoing series of disputes arising out of the marital relationship. Wright & Miller, *Federal Practice and Procedure,* § 3609. "[F]ederal courts do not have jurisdiction over a claim where the tort damages action is a mere pretense and the suit is actually concerned with custody issues." *Drewes,* 863 F.2d at 471 (citing *Jagiella v. Jagiella,* 647 F.2d 561, 565 (5th Cir.1981)).

> Valid reasons have been given in support of federal courts abstaining from exercising jurisdiction over domestic relations cases. The field of domestic relations involves local problems "peculiarly suited to state regulation and control and peculiarly unsuited to control by the federal courts." ... Because state courts historically have decided these matters, they have developed a proficiency and expertise in these cases and a strong interest in disposing of them.

*Firestone,* 654 F.2d at 1215.

In *Rodgers v. Janzen,* 891 F.2d 95 (5th Cir.1989), the court upheld the district court's dismissal of a tort suit premised upon allegations of sexual abuse of a child by the father. The court found that the resolution of the case "would require the type of inquiry into the parent-child relationship that is better conducted by state courts." 891 F.2d at 98. The court concluded that the issues raised in the federal tort case were the same issues which the state courts consider in determining child custody and visitation. The court determined that a result in the federal case "would no doubt prompt a suit in state court ... for custody and visitation reconsideration ... thereby encroaching on the apparent state interest in determining custody and risking incompatible federal and state decrees." 891 F.2d at 98.

It is undisputed that the Washtenaw County Circuit Court has proper jurisdiction to alter and revise decrees relating to the children. M.C.L. § 552.17. The record reveals that the Washtenaw Circuit Court retains that jurisdiction and has not, at any point, declined to exercise or attempted to relinquish that jurisdiction.

## II.

▌ The court has closely examined this case to determine the "true character" of this litigation. The record clearly reveals that this suit is part of an ongoing dispute between the parties regarding the issues of child support, custody, and visitation. Pamela Jordan has attempted to bring these issues into the state court in Washington, the Oakland County Circuit Court, and this court based upon her dissatisfaction with the result obtained in the Washtenaw County Circuit Court. As Dr. Benedek stated, in explaining why she specifically asked questions regarding sexual abuse in her evaluation even though the allegation had not yet been made, allegations of sexual abuse are "often the next step in this kind of progression ... when one set of allegations are disproven, the allegations escalate."

It is also clear that the tort suit is a mere pretense and the action here is an attempt to permanently alter custody and visitation. The record, the conduct of the parties in this litigation, and the issues themselves reveal that any decision reached in this case will only result in an action being brought in the Washtenaw Circuit Court. The settlement agreement originally reached in this case required defendant to terminate his parental rights, thereby permanently depriving himself of any rights to custody or visitation. This is clearly the result, or one of the results, that Pamela Jordan seeks from this litigation.

As stated in the *Rodgers* case, the issues raised in these cases are the same issues that the state court considers in determining custody and visitation. Because the state has the exclusive jurisdiction to determine custody and visitation, and because the state has a paramount interest in determining what is in the best interests of the child, the risk of inconsistent federal and state decrees is to be avoided.

Although the complaint in this case requests injunctive relief, exactly what injunctive relief is not specified. It is apparent, however, that any injunctive relief in this case would affect custody and/or visitation. Either result in this case, an award of damages, or a no-cause verdict, clearly has child custody and visitation ramifications. If sexual abuse were found in this case, and damages awarded, this would clearly raise the issue of parental fitness in the Washtenaw Circuit Court. Conversely, a no-cause in this case, particularly in light of what the legal and psychological literature demonstrate that children experience as witnesses in these types of cases, may well raise a question of Pamela Jordan's fitness as a parent. This court has no doubt that, whatever the result in this case, one of the parties will attempt to use this result to affect a change in custody or visitation in the state court.

In addition to the state's paramount interest, the state courts have the expertise and resources available to them to investigate this case, while the federal court does not. The state court is free to order and provide examinations of one or both parents to determine parental fitness and custody. The federal court does not. The state court has the facilities to evaluate the children. The federal court does not. Consequently, this case is peculiarly suited to the state court and peculiarly unsuited for federal court adjudication.

The court is acutely aware in this tragic case that the children's welfare is at stake, and that the children have not been doing well, absent their father and solely in the custody of their mother. The court does not have the resources to determine the reason or reasons for the children's difficulties and obvious deteriorating condition, or to determine what would be best for them, or to affect changes in custody or visitation that may be necessary in the children's best interest. Both children have been recently hospitalized for a lengthy period of time. The state court, on the other hand, is required by law to act in the best interests of the children. These issues, therefore, must be left for state court resolution. Accordingly, for the reasons stated,

IT IS ORDERED that defendants' motion to dismiss hereby is GRANTED and this case is DISMISSED.