Gary MAURO, Plaintiff,

v.

Susan MAURO, Fayette Arnold, Lori Arnold, Katie Lasater, Joe Doe, commonly known as Raymond Randall Lasater, and Cecilia Lasater, jointly and severally, Defendants.

No. 90–CV–70443–DT.

United States District Court,
E.D. Michigan, S.D.

April 18, 1991.

Curtis G. Rundell, II, Regina L. Meo, Suo, Rundell & Hechtman, Troy, Mich., for plaintiff.

James P. Cunningham, Williams, Schaefer, Ruby & Williams, Birmingham, Mich., for defendant Mauro.

David F. Zuppke, Zuppke & Wiseman, P.C., Birmingham, Mich., for defendants Arnold and Lasater.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

HACKETT, District Judge.

Plaintiff has filed a complaint naming his former wife, her parents, and her siblings and siblings-in-law as defendants. Count I of the complaint alleges that defendant Susan Mauro intentionally inflicted emotional distress upon plaintiff. Count II concerns the other defendants and can best be described as falling under the theory of conspiracy to commit the tort of intentional infliction of emotional distress or conspiracy to commit a tortious interference with

a parent's custodial and/or visitation rights. Jurisdiction is premised upon diversity of citizenship.

Defendant Susan Mauro has filed a motion to dismiss alleging that this court lacks subject matter jurisdiction over plaintiff's claim. The other defendants have filed a motion for summary judgment alleging lack of personal jurisdiction. The motion for summary judgment as pled is construed by this court as a motion to dismiss for lack of personal jurisdiction, and will be considered as such. Fed.R.Civ.P. 12(b)(2). For the reasons stated below, both motions to dismiss are granted.

## FACTUAL BACKGROUND

Plaintiff Gary Mauro and defendant Susan Mauro were married in 1976. Two children were born during the marriage, which ended in divorce on January 14, 1986. The Oakland County Circuit Court awarded defendant Susan Mauro physical custody of both children. Plaintiff Gary Mauro was given visitation rights. As the following facts make clear, neither the problems nor the litigation between plaintiff and defendant ended with the marriage.

In July, 1986, the Oakland County Circuit Court approved, over plaintiff's objections, Susan Mauro's change of residence and that of the minor children to Chicago, Illinois. About September and October, 1986, Susan Mauro filed complaints with the Troy, Michigan, and Lincolnwood, Illinois, Police Departments alleging sexual abuse of the minor children by plaintiff. In October, 1986, she filed with the Oakland County Circuit Court a petition to terminate plaintiff's visitation rights, alleging that plaintiff had sexually molested the children. In November, 1987, Susan Mauro pressed a federal kidnapping charge against plaintiff, for which a warrant was issued. All criminal charges were eventually dismissed.

From September, 1986, through February 26, 1988, plaintiff had no contact with his children, having been prevented from doing so by defendant Mauro. Defendant Mauro had apparently moved with the children several times including stays in Illinois, New York, and Minnesota, the places where her relatives and co-defendants live. After several interim hearings and three interim rulings by the Michigan Court of Appeals, Susan Mauro's petition to terminate Gary Mauro's visitation rights came to trial in December, 1987, and concluded in February, 1988. The trial court did not find abuse of the children by plaintiff and further determined that defendant had withheld the children from plaintiff. The trial court did note, however, that defendant's conduct was motivated by a sincere concern for her children's welfare.

Following the trial, an order was entered modifying the children's custody. Plaintiff was given physical custody of both children and legal custody was transferred to the Oakland County Friend of the Court, where it currently remains. The court also ordered family counseling and continuous review by the Friend of the Court, which also continues through the present time. The trial court's order was affirmed on appeal.

The trial did not, however, end the litigiousness of the couple. At the time that these motions to dismiss were filed, eight actions arising out of the failed marital relationship were pending in various courts. The Oakland County Circuit Court had pending the ongoing review by the Friend of the Court; an order requiring defendant Mauro to present a summer visitation plan; an Order to Show Cause why visitation has been denied defendant Mauro by plaintiff; and an action for appointment of a receiver for plaintiff's failure to pay alimony-in-gross to defendant Mauro. The Michigan Court of Appeals had pending plaintiff's appeal of a visitation order allowing once-a-month visitation between defendant Mauro and the children in Chicago and defendant Mauro's appeal of an attorney fee award to plaintiff. Plaintiff and his professional corporation have also sued defendant Mauro in a state district court over some personal property allegedly taken by her in 1986. Also pending is the tort litigation in this court.

The instant complaint alleges that defendant Mauro "intentionally engaged in a

clearly extreme and outrageous course of conduct" which caused severe emotional distress to plaintiff. The conduct is alleged to have included, among other things, concealment of the children from plaintiff, thus depriving him of visitation; filing charges against plaintiff of sexual abuse of the children; interference with his podiatry practice; and, creating a negative relationship between plaintiff and his children.

The facts concerning the involvement of the other defendants are not made clear in the complaint or subsequent pleadings. Apparently the other defendants had allowed defendant Mauro and the children to stay in their homes during the time that defendant Mauro had not permitted plaintiff access to the children. Defendant Mauro's parents, Fayette and Lori Arnold, reside in Chicago, Illinois. The other defendants are defendant Mauro's siblings and siblings-in-law. Randall and Cecilia Lasater reside in Edicott, New York. Katie and Raymond Lasater reside in Minnesota.

## DISCUSSION

## I. THE DOMESTIC RELATIONS EXCEPTION TO DIVERSITY JURISDICTION

■ Defendant Mauro moves for dismissal of this action based upon this court's lack of subject matter jurisdiction. She argues that this action falls within the domestic relations exception to federal diversity jurisdiction. Defendant Mauro concedes that her counterclaim filed in the instant matter also falls within the domestic relations exception and stipulates to its dismissal. She further argues that plaintiff has failed to state a tort claim cognizable under state law.

It has long been established that there exists an exception to the diversity jurisdiction of the federal courts for matters concerning "the subject of divorce, or for the allowance of alimony." *Barber v. Barber*, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859). This "domestic relations exception" to diversity jurisdiction has continued to develop and be refined over time. *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir.1988).

The federal courts have, under this exception, declined to exercise jurisdiction over parent-child relations or custody disputes. *Hooks v. Hooks*, 771 F.2d 935, 942 (6th Cir.1985). The exception does not apply, however, to suits that are tort or contract claims, which seek damages and have "only domestic relations overtones." *Drewes*, 863 F.2d at 471; *Hooks*, 771 F.2d at 942.

■ Complaints containing claims which appear on the surface to fall outside of the "domestic relations exception" must still be examined to determine if they verge upon or are closely related to the exception and would, therefore, require abstention. *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1216 (6th Cir.1981). "It is incumbent upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated." *Id.* A federal court may decline jurisdiction if the alleged tortious conduct is part of an ongoing series of disputes arising out of the marital relationship. Wright & Miller, *Federal Practice and Procedure*, § 3609. "[F]ederal courts do not have jurisdiction over a claim where the tort damages action is a mere pretense and the suit is actually concerned with custody issues." *Drewes*, 863 F.2d at 471 (citing *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir.1981)).

> Valid reasons have been given in support of federal courts abstaining from exercising jurisdiction over domestic relations cases. The field of domestic relations involves local problems "peculiarly suited to state regulation and control and peculiarly unsuited to control by the federal courts." ... Because state courts historically have decided these matters, they have developed a proficiency and expertise in these cases and a strong interest in disposing of them.

*Firestone*, 654 F.2d at 1215.

In *Rogers v. Janzen*, 891 F.2d 95 (5th Cir.1989), the court upheld the district court's dismissal of a tort suit premised upon allegations of sexual abuse of the child by the father. The court found that the resolution of the case "would require

the type of inquiry into the parent-child relationship that is better conducted by state courts." 891 F.2d at 98. The court concluded that the issues raised in the federal tort case were the same issues which the state courts consider in determining child custody and visitation. The court determined that a result in the federal case "would no doubt prompt a suit in state court ... for custody and visitation reconsideration ... thereby encroaching on the apparent state interest in determining custody and risking incompatible federal and state decrees." 891 F.2d at 98.

In *Jagiella,* the case cited by the Sixth Circuit in *Drewes,* the Fifth Circuit affirmed the district court's dismissal of a counterclaim seeking damages in tort for alienation of the children's affections and the resulting intentional infliction of mental anguish. 647 F.2d 561. The Court found that "[t]he general inquiry is whether the claim will necessitate the court's involvement in domestic issues, i.e., whether it will require inquiry into the marital or parent-child relationship." *Id.* The *Jagiella* court adopted the reasoning of *Bacon v. Bacon,* 365 F.Supp. 1019 (D.Ore.1973). In that case, the district court dismissed a suit alleging the tort of intentional infliction of emotional distress based upon, among other allegations, withholding of child support; an attempt to alienate the children from the plaintiff; and lying to the children about the plaintiff. 365 F.Supp. at 1020. The court found that:

> [s]tripped of its verbiage, this is no more—and no less—than a domestic relations case. While it may be true, as Plaintiff's counsel has urged, that there are instances where estranged parties may properly sue each other in federal courts, this is not one.... The language of the complaint shows this to be part of an ongoing series of disputes centering around the dissolved but still stormy relationship and the status of—and harm to—their children.... [I]f this case were allowed to be maintained, United States District courts would be deluged

with domestic relations cases, all containing initially colorable tort claims of "extreme and outrageous conduct resulting in severe emotional distress" where the parties have placed [a state border] between themselves in an attempt to escape each other.

*Jagiella,* 647 F.2d at 565 (quoting *Bacon,* 365 F.Supp. at 1020.)

It is undisputed that the Oakland County Circuit Court has proper jurisdiction to alter and revise decrees relating to the children. M.C.L. § 552.17. The record reveals that the Oakland Circuit Court retains that jurisdiction and has not, at any point, declined to exercise or attempted to relinquish that jurisdiction.

The court has closely examined this case to determine the "true character" of this litigation. The record establishes that this action is part of an ongoing dispute between plaintiff and defendant Mauro regarding the issues of alimony, property settlement, custody, and visitation. These issues have been brought by one party or the other in the Oakland County Circuit Court, the state district and appellate courts, the courts in Illinois, and the federal system.

It is also apparent that the tort suit is a "mere pretense" and the action here is an attempt to permanently alter custody and/or visitation. The current custody order, on its face, makes clear that it is not intended to be final or permanent. The fact that the Oakland County Friend of the Court retains legal custody of the children is some indication that the court has not reached a final decision as to what is in the children's best interests.[1] The visitation issue appears to be a hotly contested one, with visitation issues pending in both the Oakland Circuit and Michigan Court of Appeals.

The complaint filed in this case closely resembles the counterclaim in *Jagiella* and the complaint in *Bacon.* The negative effect upon the parent-child relationship or

---

1. Although custody, visitation and support orders are never "final" in that the circuit courts retain jurisdiction to modify, this particular or-

der appears to be an interim measure taken by the court while it further investigates matters.

alienation of the children from the plaintiff has been specifically pled in this case. Plaintiff attempts to distinguish these cases by stating that, "unlike *Jagiella*, [this] is not an attempt to change the custody arrangement by the use of tort. Further *Bacon* ..., unlike the action at bar, involved an action for intentional infliction of mental anguish centered around a dissolved but stormy relationship." Plaintiff's own description of the *Bacon* case, while not completely correct, also describes his own complaint and, thus, does not serve to distinguish it. Plaintiff also misconstrues the nature of the complaint in *Jagiella*. That cross-claim did not overtly seek a change in custody, but rather, as described by the Sixth Circuit in *Drewes*, involved "an attempt to alter the custody arrangement by the use of a tort cause of action such as 'alienation of a child's affection'". 863 F.2d at 472.

This is exactly the nature of plaintiff's claims in the instant matter. Any decision reached in this case will most certainly impact on any future custody and/or visitation actions in the state court system. Either result in this case, an award of damages, or a no-cause verdict, may raise questions regarding parental fitness, as issues regarding the relationship to and proper care of the minor children will have to be litigated in this case. The court has no doubt that, whatever the result in this case, one of the parties will attempt to use this result to affect a change in custody or visitation in the state court. As stated in *Rogers*, the issues raised in this case are the same issues the state court considers in determining custody and visitation. Because the state has the exclusive jurisdiction to determine custody and visitation, and because the state has a paramount interest in determining what is in the best interests of the child, the risk of inconsistent federal and state decrees is to be avoided.

Plaintiff cites *Rykers v. Alford*, 832 F.2d 895 (5th Cir.1987), in support of his contention that this case falls outside of the domestic relations exception to diversity jurisdiction. That case does not, however, support plaintiff's position and in fact, provides further support for dismissal. Plaintiff in that case, the father of the child to whose mother he had never been married, sued the mother for deprivation of parental rights, his seven year search for the child who had been moved by the mother, and malicious prosecution. The district court dismissed the case as being within the domestic relations exception to diversity jurisdiction. The Fifth Circuit affirmed, holding that while the claim was framed in tort, it required a determination of custody rights in order to decide liability for deprivation of parental rights. The court held that there was too great a risk of inconsistent federal and state court judgments in that area and that the claim was properly dismissed. The court reasoned:

> If the federal court must determine which parent receives custody, what rights the noncustodial parent should have, how much child support should be paid and under what conditions, or *whether a previous court's determination on these matters should be modified*, then the court should dismiss the case. On the other hand, if the court need only decide whether an already-set custody or child support has been complied with, or whether the parties have committed acts that would be actionable *even if everyone involved was unrelated*, then the federal courts should retain the case.

832 F.2d at 900 (emphasis added).

It is clear that plaintiff would not have any cause of action in the absence of his relationship with the children, his ex-wife and her family. Without those relationships, it is not likely that plaintiff would even have a colorable claim. Accordingly, the court must dismiss this case as falling within the domestic relations exception to diversity jurisdiction. Because the court determines that it has no jurisdiction over the claim against defendant Mauro, it will not decide whether plaintiff's claim is cognizable under Michigan law.

## II. PERSONAL JURISDICTION OVER NON–RESIDENT DEFENDANTS

■ The other defendants in this case move for dismissal on the basis that plain-

tiff cannot establish personal jurisdiction over them. Defendants assert that they have not committed any acts in Michigan, and that plaintiff cannot show that they had sufficient contacts with Michigan to establish personal jurisdiction.

■ The plaintiff bears the burden of establishing the existence of personal jurisdiction. *Serras v. First Tennessee Bank National Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir.1974)). The level of plaintiff's burden depends upon the procedure used by the district court in deciding the issue. *Serras*, 875 F.2d at 1214.

> If the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise[,] ... specific facts showing that the court has jurisdiction." When the trial court has determined that the motion to dismiss for lack of personal jurisdiction can be decided upon these written submissions, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff."

*Id.* (citations omitted). Plaintiff's burden, therefore, is making a *prima facie* showing that personal jurisdiction exists. *Id.*

The federal district court possesses long-arm jurisdiction only in accordance with the long-arm statute of the state in which it sits. Fed.R.Civ.P. 4(e). The reach of the state's long-arm statute is limited, however, by the due process clause of the federal constitution. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

> The duty of the court is to assure itself that the requirements of both authorities—the state long-arm statute and the due process clause—are met before it can assert its jurisdiction over the person of the defendant.

*Serras*, 875 F.2d at 1216.

Michigan's long-arm statutes provide that general personal jurisdiction can be obtained over a defendant who was present in Michigan at the time that process was served; who was domiciled in Michigan at the time process was served; or who consents to personal jurisdiction. M.C.L. § 600.701. The long-arm statutes also provide for limited personal jurisdiction over individuals. The statute, M.C.L. § 600.705, provides in pertinent part:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

Plaintiff asserts that this court has personal jurisdiction over the defendants because defendants' actions caused consequences to occur in Michigan which resulted in a tort. Plaintiff further asserts that defendants purposefully availed themselves to Michigan by harboring and concealing the minor children in contravention of Michigan court orders. Plaintiff argues that, based upon defendants' conduct, they should have reasonably anticipated being haled into a Michigan court.

Defendants contend that the only nexus with Michigan is that the consequences or damages allegedly suffered by plaintiff occurred there. Defendants argue that those consequences, alone, do not provide sufficient contacts to establish personal jurisdiction.

In *Khalaf v. Bankers & Shippers Insurance Co.*, 404 Mich. 134, 273 N.W.2d 811 (1978), the Michigan Supreme Court considered the question of personal jurisdiction which, according to the plaintiff, was established based upon consequences which occurred in Michigan giving rise to an action for tort. The court noted that "[p]roof alone that a nonresident caused an effect in

Michigan that was foreseeable does not establish a relationship to Michigan such as to make it fair and reasonable to subject the nonresident to jurisdiction." 404 Mich. at 145, 273 N.W.2d 811. The court noted that while the foreseeability of the effects in the forum state was part of the legal analysis on this issue, the essential consideration was whether the defendant had purposefully availed himself to the privilege of conducting activities in Michigan. 404 Mich. at 153, 273 N.W.2d 811.

> It is *"essential in each case* that there be some act by which *the defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." The defendant's activities will ordinarily be such that he will have "reason to expect to be haled before" the forum court.

404 Mich. at 148, 273 N.W.2d 811 (emphasis in original) (citations and footnotes omitted).

The court, noting that causing foreseeable effects did not alone constitute purposefully availing, defined purposeful availment as "something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities." 404 Mich. at 153–54, 273 N.W.2d 811.

The Michigan courts apply a three part test for determining whether there are sufficient minimum contacts between a nonresident defendant and the forum state to support an exercise of personal jurisdiction. The acts are, however, not measured quantitatively, but rather qualitatively. One single act can establish minimum contacts. *Parish v. Mertes,* 84 Mich.App. 336, 341, 269 N.W.2d 591 (1978).

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 US 235; 78 SCt 1228; 2 LEd2d 1283 (1958). Second, the cause of action must arise from defendant's

activities in the forum state. Finally, the acts of the defendant must have substantial enough connection with the forum state to make the exercise of jurisdiction over defendant reasonable.

*McGraw v. Parsons,* 142 Mich.App. 22, 26, 369 N.W.2d 251 (1985) (citation form in original and also citing *In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 226 (6th Cir.1972)).

This three part test was applied in the case of *Rainsberger v. McFadden,* 174 Mich.App. 660, 436 N.W.2d 412 (1988). In that case, plaintiff, a Michigan resident, filed a paternity suit against a Canadian resident. The child was conceived in Canada. Plaintiff asserted that the court possessed personal jurisdiction over defendant pursuant to M.C.L. § 600.705, in that the act had caused consequences in Michigan. Applying the three part test of *McGraw, supra,* the court found that it could not exercise personal jurisdiction consistent with the requirements of due process, because the defendant had insufficient minimum contacts with Michigan.

> He did not purposefully act in or towards the state. Any cause of action could not have materialized from his action in the state. He could not have reasonably expected that any action he might have taken in Canada would result in his being haled into court in Michigan. Furthermore, his burden would be great as he would be forced to defend himself in a foreign legal system. This particular burden must be weighed in assessing the reasonableness of the exercise of personal jurisdiction. While the state and plaintiff have an interest in the matter, it is the acts of defendant which determine if the exercise of jurisdiction is proper.

174 Mich.App. at 666, 436 N.W.2d 412 (citations omitted).

Plaintiff argues the "defendants purposely availed themselves to the State of Michigan in their harboring and concealment of the minor children in direct contravention of Michigan Court Orders causing the Plaintiff, Gary Mauro, to suffer intentional infliction of emotional distress." Plaintiff fails to note that what is required

180

is purposeful availment of the *privilege of acting in the forum state.* Under the definition provided in *Khalaf,* it is not clear that defendants have either deliberately undertaken to do or caused an act or thing to be done in Michigan or been the prime generating cause of the effects or results in Michigan.

The affidavits submitted with defendants' motion show that Susan Mauro and the children stayed at the Arnold's home for approximately three days between December 1, 1986, and February 25, 1988. During that same time period, Susan Mauro and the children stayed in Minnesota for three to four weeks and in New York for two weeks. All of the defendants state in their affidavits that they were not aware that Susan Mauro was in violation of any Michigan court order. Based on the facts before the court, defendants were not a "prime generating cause" and appear to have been passive actors toward any effect in Michigan. Neither does plaintiff's cause of action arise from defendants' activities *in Michigan.* There simply is not a substantial enough connection for this court's exercise of personal jurisdiction over the non-resident defendants.

Plaintiff has failed to come forward with any specific facts showing that this court has jurisdiction. Plaintiff has, therefore, failed to sustain his burden on this issue. This action must be dismissed as to all non-resident defendants for lack of personal jurisdiction.

For the above reasons, this complaint hereby is dismissed as to all parties.

SO ORDERED.